**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

TERRY L. WOOD,

       Defendant - Appellant.

No. 96-3141

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-CR-40025)

---

Robert V. Eye (Pedro L. Irigonegaray and Elizabeth R. Herbert, Topeka, Kansas, with
him on the briefs), for Defendant - Appellant.

James E. Flory (Jackie N. Williams, United States Attorney, and Randy M. Hendershot,
Assistant United States Attorney, Topeka, Kansas, with him on the brief), for Plaintiff -
Appellee.

---

Before BALDOCK, KELLY and LUCERO, Circuit Judges.

---

KELLY, Circuit Judge.

---

      Terry Wood appeals from the district court's denial of his motion to suppress

evidence discovered during a search of his car. He argues that the officer who conducted

the search did not have the reasonable suspicion required by the Fourth Amendment as a predicate for the seizure which preceded the search. We exercise jurisdiction under 28 U.S.C. § 1291, and reverse.

## Background

On March 31, 1995, Kansas Highway Patrol Trooper Richard Jimerson stopped Mr. Wood on Interstate 70 for speeding. Mr. Wood pulled over immediately when signaled to do so. The trooper approached the car and, as he stood at the driver's side window, noticed trash on the floor, including sacks from fast-food restaurants, and open maps in the passenger compartment. He also determined that Mr. Wood was "extremely nervous"; his breathing was rapid, his hands trembled as he handed over his driver's license, and he cleared his throat several times. Trooper Jimerson saw that the car had a phone with a credit card reader and surmised that the car was rented. When asked, Mr. Wood confirmed that he had rented the car, and produced the rental papers. Trooper Jimerson asked where Mr. Wood had rented the car, and was told San Francisco. The trooper told Mr. Wood that he had been stopped for speeding, and then returned to the patrol car to fill out a warning citation.

Trooper Jimerson initiated a computer check on Mr. Wood's driver's license as well as a criminal history check. He examined the rental papers, which reflected that the car had been rented in Sacramento. Upon observation of this discrepancy, the trooper asked Mr. Wood to join him in the patrol car.

Trooper Jimerson asked Mr. Wood about the discrepancy between the rental locations. Mr. Wood promptly corrected his error, and confirmed that the car had indeed been rented in Sacramento. The trooper had also noted that the rental papers indicated that the car was due back in Sacramento the following day, and asked Mr. Wood about his travel plans. Mr. Wood informed the trooper that he was traveling in the car only one way, and that the rental company was aware of his plans. Mr. Wood explained that he had flown with his sister to Sacramento on a vacation, and that she had returned by plane to Topeka while he chose to drive to enjoy the scenery. While awaiting the results of the computer checks, Trooper Jimerson and Mr. Wood engaged in casual conversation. Mr. Wood revealed that he was an unemployed painter but that he expected to return to work in about six weeks. The two discussed Mr. Wood's vacation, and the good rate Mr. Wood had received on the rental car. While Mr. Wood was in the patrol car, the trooper simultaneously received the results of the two computer checks, which indicated that Mr. Wood had a valid driver's license and a narcotics history. The trooper asked Mr. Wood if he had ever been arrested, and Mr. Wood acknowledged his 1984 arrest for drugs. The trooper asked if the arrest was for a misdemeanor, and was told it was for a felony.

Trooper Jimerson then completed the warning ticket, returned the driver's license and rental papers to Mr. Wood, and told him he was free to go. As Mr. Wood began to exit the patrol car, the trooper inquired if he could ask him a few questions; Mr. Wood's reply was equivocal. Trooper Jimerson asked if Mr. Wood had any narcotics or weapons,

and was told no.  The trooper asked Mr. Wood if he would consent to a search of his car, and was again told no.  At this point, eight to ten minutes after the initial traffic stop, and after having failed to obtain voluntary consent to search, Trooper Jimerson told Mr. Wood that he was detaining the car and its contents in order to subject it to a canine sniff.

The events which transpired after Trooper Jimerson announced his decision to detain the car are not relevant to the issues in this appeal.  Suffice it to say, however, the canine team arrived, the dog alerted on the car, the car was searched, and narcotics were found in the trunk.

Mr. Wood moved in the district court to suppress, arguing that the contraband was the fruit of the poisonous tree because Trooper Jimerson did not have reasonable suspicion to detain his car.  The district court denied this motion, as well as a subsequent motion for reconsideration.  Mr. Wood then entered a conditional guilty plea pursuant to Fed. R. Crim. P. 11(a)(2) to possession of over 100 grams of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Mr. Wood now appeals the district court's denial of his motion to suppress.  Mr. Wood's filing of his notice of appeal after his conditional guilty plea but before sentencing does not disturb our jurisdiction.  Fed. R. App. P. 4(b); United States v. Green, 847 F.2d 622, 623-25 (10th Cir. 1988) (en banc).


Discussion

In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. United States v. Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law which we review de novo. Id. We view the evidence in the light most favorable to the district court's determination. United States v. Davis, 94 F.3d 1465, 1467 (10th Cir. 1996); United States v. Ledesma-Dominguez, 53 F.3d 1159, 1161 (10th Cir. 1995).

A routine traffic stop is a seizure within the meaning of the Fourth Amendment. For purposes of constitutional analysis, however, it is characterized as an investigative detention rather than a custodial arrest. Berkemer v. McCarty, 468 U.S. 420, 439 (1984). The reasonableness of an investigative detention is judged under the principles announced in Terry v. Ohio, 392 U.S. 1, 19-20 (1968), which mandates a two-part inquiry. First, we determine whether the stop was justified at its inception. Id. at 20; United States v. Lee, 73 F.3d 1034, 1038 (10th Cir. 1996). This first part of the Terry inquiry is not a matter of dispute in this appeal as Mr. Wood no longer challenges the reasonableness of the initial traffic stop. Second, we determine whether the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place. Terry, 392 U.S. at 20; Lee, 73 F.3d at 1038. Mr. Wood does challenge the reasonableness of Trooper Jimerson's detention of his car in order to subject it to a canine sniff, after failing to obtain voluntary consent.

An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification. Florida v. Royer, 460 U.S. 491, 500 (1983); Lee, 73 F.3d at 1038-39. During a traffic stop for speeding, a police officer is permitted to ask such questions, examine such documentation, and run such computer verifications as necessary to determine that the driver has a valid license and is entitled to operate the vehicle. United States v. Miller, 84 F.3d 1244, 1250 (10th Cir.), cert. denied sub nom. Hicks v. United States, 117 S. Ct. 443 (1996). The officer may detain the driver and his vehicle as long as reasonably necessary to make these determinations and to issue a citation or warning. United States v. Martinez, 983 F.2d 968, 974 (10th Cir. 1992) (citing United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988), overruled in part on other grounds by United States v. Botero-Ospina, 71 F.3d 783 (10th Cir. 1995)), cert. denied sub nom. Araujo v. United States, 507 U.S. 1056 (1993), and cert. denied, 508 U.S. 922 (1993). In appropriate circumstances, to ensure the officer's safety, the officer may obtain information regarding the detainee's criminal history. United States v. McRae, 81 F.3d 1528, 1536 n.6 (10th Cir. 1996). However, "[w]hen the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." Lee, 73 F.3d at 1039 (quoting United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994)) (further quotations and internal quotation marks omitted).

Both parties raise issues pertaining to questions Trooper Jimerson asked Mr. Wood regarding his criminal record after receiving the results of the computer checks. Contrary to circuit precedent, the government argues that an officer need not have reasonable suspicion about a matter unrelated to the initial stop before asking detainees questions about that matter. Compare United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995), with United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993). We need not consider this issue since its resolution is unnecessary to our disposition, given our discussion below. Trooper Jimerson had been advised by his dispatcher of essentially the same information that he elicited by his questions. The only additional event which occurred subsequent to the trooper's "release" of Mr. Wood and the decision to detain the vehicle was Mr. Wood's refusal to consent to a search of his car, and it should go without saying that consideration of such a refusal would violate the Fourth Amendment.

An investigative detention may be permissibly expanded beyond the reason for its inception if the person stopped consents to that expansion. See United States v. McKneely, 6 F.3d 1447, 1450 (10th Cir. 1993). This appeal does not present this exception, however, since Mr. Wood did not consent to the detention of his car. Absent valid consent, the scope or duration of an investigative detention may be expanded beyond its initial purpose only if the detaining officer at the time of the detention has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Lambert, 46 F.3d 1064, 1069 (10th Cir. 1995) (quoting United

States v. Bloom, 975 F.2d 1447, 1456 (10th Cir. 1992)) (further quotation omitted); see also Lee, 73 F.3d at 1038 (citing Terry, 392 U.S. at 21). The failure to consent to a search cannot form any part of the basis for reasonable suspicion. United States v. Manuel, 992 F.2d 272, 274 (10th Cir. 1993).

The district court concluded that Trooper Jimerson had specific articulable facts which, in the aggregate, gave him reasonable suspicion to question Mr. Wood regarding his prior drug convictions and other drug-related matters, to seek consent to search, and to detain the car while a canine sniff was conducted.

We are well aware that the existence of objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances. United States v. Bloom, 975 F.2d 1447, 1456 (10th Cir. 1992) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)); United States v. Soto, 988 F.2d 1548, 1555 (10th Cir. 1993). The "whole picture" must be taken into account. Bloom, 975 F.2d at 1456 (quoting Cortez, 449 U.S. at 417-18) (further quotations omitted). Common sense and ordinary human experience are to be employed, United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994), and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions. United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir. 1994). Inchoate suspicions and unparticularized hunches, however, do not provide reasonable suspicion. United States v. Fernandez, 18 F.3d 874, 878 (10th Cir. 1994) (citing United States v. Sokolow, 490 U.S.

- 8 -

1, 7 (1989); Terry, 392 U.S. at 27).  Even though reasonable suspicion may be founded upon factors consistent with innocent travel, Sokolow, 490 U.S. at 9-10, "[s]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous."  Lee, 73 F.3d at 1039; Reid v. Georgia, 448 U.S. 438, 441 (1980).  We therefore examine, both individually and in the aggregate, the factors found by the trooper and the district court to give rise to reasonable suspicion to detain Mr. Wood's car.

The first factor set forth by the district court was Mr. Wood's "unusual" travel plans.  The court determined that it was "[un]likely or [im]plausible that an unemployed painter in Kansas could afford to take a two-week vacation in California, to fly there one-way in a commercial airplane, to rent a 1995 Mercury Marqu[i]s in California, and then to drive the rental car back to Kansas."  Aplt. App. 32-33.  It is true that unusual travel plans may provide an indicia of reasonable suspicion.  For example, in Sokolow, 490 U.S. at 9, the defendant's travel itinerary was one of several factors which led the Supreme Court to conclude that reasonable suspicion supported the decision to search the defendant.  Mr. Sokolow had made the twenty-hour flight from Honolulu to Miami in July for a forty-eight hour sojourn in Miami.  Id.

We disagree with the district court's legal conclusion that Mr. Wood's travel plans were the sort of unusual plans which give rise to reasonable suspicion of criminal activity.  Mr. Wood told the trooper he was taking a vacation.  He had a valid driver's license and presented papers which proved his authority to operate the car, which had been rented in

his own name. There is nothing criminal about traveling by car to view scenery. Since Mr. Wood was unemployed and did not expect to return to work for another six weeks, his schedule permitted him the luxury of time to make such a trip. Moreover, temporary unemployment does not mean that vacations are financially unattainable. Mr. Wood may have saved money for the trip; he may have been the donee of a wealthy relative or acquaintance; he might have won the lottery or not yet exceeded the credit line on his VISA card. Mr. Wood's itinerary was very different from that in Sokolow, and his employment status did not make his itinerary unusual.

The district court also found that Mr. Wood's error in identifying the city where he had rented his car was a factor which suggested that criminal activity was afoot. As with unusual travel plans, inconsistencies in information provided to the officer during the traffic stop may give rise to reasonable suspicion of criminal activity. See United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir.), cert. denied, 115 S. Ct. 1721 (1995); United States v. Sanchez-Valderuten, 11 F.3d 985, 989 (10th Cir. 1993). Again, however, Mr. Wood's error in identifying the city where he rented the car is not the sort of inconsistency that warrants such a conclusion.

Mr. Wood's error might give rise to suspicion if it suggested that he was trying to conceal the fact that he had rented the car in a city known to be a source for narcotics. Trooper Jimerson testified that California is a known source state for narcotics; he also testified that the fact that Mr. Wood's car had California license plates and registration

was of no significance to him. Furthermore, the trooper did not indicate, nor is there any evidence in the record, that Sacramento is regarded as a source city for narcotics, while San Francisco is not. Mr. Wood's error might also be suspicious if other information provided to the trooper contradicted his explanation. E.g., Kopp, 45 F.3d at 1453-54; Sanchez-Valderuten, 11 F.3d at 989. No such evidence supports the district court's conclusion, indeed, under the district court's reasoning, Mr. Wood caused suspicion both by making the error in the first instance and by "later promptly admitt[ing]" his mistake. Once Mr. Wood corrected his error, suspicious inconsistencies virtually evaporated and any justification his error yielded for further investigation dissipated.

The district court also concluded that the presence of fast food wrappers and open maps in the passenger compartment contributed to a finding that reasonable suspicion existed. Mr. Wood informed the trooper of his travel itinerary—a cross-country trip through parts of the country he had not seen before. The presence of open maps in the passenger compartment is not only consistent with his explanation, but is entirely consistent with innocent travel such that, in the absence of contradictory information, it cannot reasonably be said to give rise to suspicion of criminal activity. See Karnes v. Skrutski, 62 F.3d 485, 495 (3d Cir. 1995). Remnants from fast-food restaurants can probably be found on the floor of many cars traveling the interstate highways, including many traveling eastbound on Interstate 70. See Karnes, 62 F.3d at 496 (Fast-food wrappers "have become ubiquitous in modern interstate travel and do not serve to

separate the suspicious from the innocent traveler.").  The possession of open maps and the vestiges of fast-food meals describes a very large category of presumably innocent travelers, Reid, 448 U.S. at 441, and any suspicion associated with these items is virtually nonexistent.

Another factor which figured prominently in the district court's determination was Trooper Jimerson's subjective assessment of Mr. Wood as extremely nervous during the traffic stop.  It is certainly not uncommon for most citizens—whether innocent or guilty—to exhibit signs of nervousness when confronted by a law enforcement officer.  See Fernandez, 18 F.3d at 879; Lambert, 46 F.3d at 1070-71; United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992); United States v. Hall, 978 F.2d 616, 621 & n.4 (10th Cir. 1992).  Trooper Jimerson had no prior acquaintance with Mr. Wood which enabled the trooper to contrast Mr. Wood's behavior during the traffic stop with his usual demeanor.  Hall, 978 F.2d at 621; Bloom], 975 F.2d at 1458.  "We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on . . . nervousness . . . as a basis for reasonable suspicion . . . must be treated with caution."  Fernandez, 18 F.3d at 879 (citation omitted).  Thus, Mr. Wood's demeanor during the detention must be discounted given the generic claim of nervousness.

The remaining factor relied upon by the district court was Mr. Wood's prior narcotics convictions.  Although Trooper Jimerson subsequently received more detail

about the number of times Mr. Wood had been convicted, and an indication from the El Paso Intelligence Center that Mr. Wood was a known narcotics trafficker, at the time he detained Mr. Wood the trooper knew only that Mr. Wood had a narcotics record. The trooper inquired about that record, and Mr. Wood promptly and truthfully responded to the inquiries.

We have previously cautioned that prior criminal involvement alone is insufficient to give rise to the necessary reasonable suspicion to justify shifting the focus of an investigative detention from a traffic stop to a narcotics or weapons investigation. Lee, 73 F.3d at 1040; Sandoval, 29 F.3d at 542. "If the law were otherwise, any person with any sort of criminal record . . . could be subjected to a Terry-type investigative stop by a law enforcement officer at any time without the need for any other justification at all." Id. at 543. Given the near-complete absence of other factors which reasonably gave rise to suspicion, the fact that Mr. Wood had previously been convicted of narcotics violations adds little to the calculus.

The factors relied upon by the district court are insufficient to support a finding that reasonable suspicion existed on the facts of this case. Reliance on the mantra "the totality of the circumstances" cannot metamorphose these facts into reasonable suspicion. Although the nature of the totality of the circumstances test makes it possible for individually innocuous factors to add up to reasonable suspicion, it is "impossible for a

combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." Karnes, 62 F.3d at 496.

After stripping away the factors which must be disregarded because they are innocuous, we are left with Mr. Wood's nervousness and his prior narcotics history—both factors which this court has cautioned are of only limited significance in determining whether reasonable suspicion existed. To sanction a finding that the Fourth Amendment permits a seizure based on such a weak foundation would be tantamount to subjecting the traveling public to virtually random seizures, inquisitions to obtain information which could then be used to suggest reasonable suspicion, and arbitrary exercises of police power. Reid, 448 U.S. at 441; United States v. Johnson, 63 F.3d 242, 247 (3d Cir. 1995), cert. denied, 116 S. Ct. 2528 (1996). Accordingly, because Trooper Jimerson detained Mr. Wood's car without reasonable suspicion, the evidence of narcotics discovered in his trunk is tainted by the unlawfulness of that detention and must be suppressed. Wong Sun v. United States, 371 U.S. 471, 484-86 (1963).

REVERSED and REMANDED.