**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff–Appellee,

v.

LUIS DUENAS,

        Defendant–Appellant.

No. 08-3108
(D.C. No. 2:07-CR-20035-CM-2)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BALDOCK**, and **MURPHY**, Circuit Judges.

Luis Duenas entered a plea of guilty to one count of possession with intent to distribute more than 500 grams of methamphetamine mixture in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2. Duenas reserved the right to appeal the denial of his motion to suppress, a challenge he now presents to this court. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

## I

On March 7, 2007, at approximately 5:15 p.m., Duenas was traveling eastbound on Interstate 70 in Kansas in a rented white Ford Expedition. Kansas Highway Patrol Trooper James W. Taylor was driving in his cruiser in the opposite direction and clocked Duenas' car traveling at 85 miles per hour in a 70 mile per hour zone. Taylor crossed the median, turned his cruiser to the east, caught up to the Expedition, and stopped Duenas for speeding.

Duenas was the driver and sole occupant of the Expedition. While Taylor was explaining to Duenas why he had been stopped, Taylor noticed that Duenas was breathing more heavily than normal, avoided eye contact, and his hands were shaking. In Taylor's view, Duenas was "very nervous over the stop"—much more than Taylor usually encountered during traffic stops. Duenas denied traveling at more than 70 miles per hour and claimed he was adjusting the cruise control at the time of the encounter.

On request, Duenas produced a valid California driver's license and a vehicle rental agreement dated March 5, 2007. The rental agreement was issued by Enterprise Rent-A-Car in San Rafael, California, and was in the name of Luis Alvarez, although it was signed "Luis Duenas." It provided for a five-day rental and specified that the Expedition could be driven in only two states—California and Nevada. The word "California" was typed on the agreement whereas the word "Nevada" was written in by hand.

On being asked where he had begun his trip, Duenas said he was coming from California, had stopped in Las Vegas, and was going to Kansas because he had family in the state and was planning to move there. When asked what part of Kansas he was visiting, Duenas responded, "the main town." Taylor then asked why Duenas was driving in Kansas if the rental agreement limited use to California and Nevada. Duenas claimed that Enterprise personnel knew he was going to drive the car outside of those states and that he had been told it was okay to do so. In Taylor's view, "[t]he more I spoke with [Duenas], the more nervous he got."

Taylor then took all documents to the patrol car, contacted dispatch, and asked for a check of Duenas' driver's license and criminal history. He then called the San Rafael Enterprise office and reached Anthony Clumeck, the individual who rented the car to Duenas. Taylor explained that he had stopped Enterprise's vehicle in Kansas and asked if Duenas had authorization to drive the car outside of California and Nevada. Clumeck answered that he did not, but declined to have the vehicle seized because seizure would require sending someone to Kansas to retrieve it. Taylor completed his call and then asked his dispatcher to send a canine unit to the scene.

Taylor walked back to Duenas' vehicle, returned his paperwork, and issued Duenas a warning. Taylor told Duenas, "Have a safe trip and drive safely," and took several steps back toward his cruiser. Approximately ten minutes had

elapsed from the time when Taylor initially stopped the car to the time he returned Duenas' paperwork.

After taking a few steps back toward his cruiser, however, Taylor stepped back toward the Expedition and asked Duenas, "Hey Luis can I ask you a couple of questions? Is it okay to visit with you for a minute? Can I talk to you for a minute?" Duenas responded, "Sure." Taylor told Duenas that he had called the rental company and that Duenas was not allowed to drive the car in Kansas. Duenas responded that, because he had unlimited mileage, he could drive it anywhere. Taylor asked Duenas what he did for work, and Duenas replied that he worked in construction and as a gardener, reiterating that he wished to move to Kansas. Taylor then asked Duenas, "You're not hauling anything illegal in this vehicle, are you?—any guns, drugs, money, anything like that?" Duenas replied, "No." Taylor then asked, "Would you have a problem if I searched the vehicle?" Duenas refused to consent, explaining that he knew his rights from a previous encounter with law enforcement.

Taylor then told Duenas that he thought there was something illegal in the vehicle and that he did not believe Duenas' travel plans. He asked Duenas to stay in the vehicle with the windows rolled up until the canine unit arrived and then Taylor returned to his patrol car. At this point, approximately three minutes had elapsed from the time when Taylor returned Duenas' paperwork.

Another three minutes later, Taylor returned to the Expedition, asked Duenas to step out, and completed a pat down search. At the same time, the canine unit arrived and the police dog promptly alerted to the presence of narcotics near the left rear passenger door. Taylor then informed Duenas that he was going to search the vehicle. Approximately two pounds of methamphetamine were found, and Duenas was arrested.

A grand jury later indicted Duenas on counts of (1) conspiracy to distribute and possess with intent to distribute more than 500 grams of methamphetamine mixture, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2; and (2) possession with intent to distribute more than 500 grams of methamphetamine mixture, in violation of the same. After the district court denied his motion to suppress, Duenas pleaded guilty to the second charge pursuant to an agreement with the government in which he reserved the right to appeal the denial of the motion. This appeal followed.

## II

In reviewing the denial of a motion to suppress, the ultimate determination of reasonableness under the Fourth Amendment is considered de novo. United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004). We view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. United States v. McKissick, 204 F.3d 1282, 1296 (10th Cir. 2000). "[C]redibility of witnesses, . . . weight to be given

- 5 -

evidence, and . . . reasonable inferences drawn from the evidence [all] fall within the province of the district court." Id. (quoting United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999)).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment, and is analyzed under the framework applicable to investigative detentions. United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). We first ask "whether the stop was justified at its inception" and if so, if "the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place." Id. (citing Terry v. Ohio, 392 U.S. 1, 20 (1968)). Duenas neither contests the reasonableness of the initial traffic stop nor the propriety of the exchange that took place after Taylor issued the warning but before Taylor asked for permission to search the vehicle. Moreover, he does not challenge the district court's finding that the canine's alert provided probable cause to search the vehicle. Thus, the sole issue for us to decide is: was there reasonable suspicion to continue to detain Duenas after he refused Taylor's request to search the car. We conclude that there was.

"[O]nce an officer returns the driver's license and vehicle registration and issues a warning ticket, he must allow the driver to proceed without further detention or questioning unless the officer has an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity." United States

- 6 -

v. Lyons, 510 F.3d 1225, 1237 (10th Cir. 2007). We look to the totality of the circumstances in evaluating whether Taylor had an objectively reasonable basis to prolong the detention after Duenas refused to consent to a search. Id. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Santos, 403 F.3d 1120, 1134 (10th Cir. 2005) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002) (quotation omitted)). Applying these standards, we must conclude that Taylor's detention of Duenas was objectively reasonable.

A combination of three factors drives our conclusion.[1] First, the rental agreement prohibited Duenas from operating the vehicle outside California and Nevada. The district court found that Duenas lied about his authority to operate the car in Kansas. Based on our review of the record, we have no reason to second-guess the district court's findings on this issue. The rental agreement plainly did not authorize travel in Kansas. This was confirmed when Taylor spoke to the very agent at Enterprise who rented the car to Duenas. Duenas did claim that he believed he had authority to drive the car in Kansas because of unlimited mileage provisions. But given the clarity with which the rental agreement speaks, we cannot say that the district court's finding that Duenas lied

---

[1] We do not consider Duenas' refusal to consent in our analysis. As we have stated elsewhere, "it should go without saying that consideration of such a refusal would violate the Fourth Amendment." Wood, 106 F.3d at 946.

about his right to travel outside California and Nevada was clearly erroneous. Cf.

United States v. Edwards, 576 F.2d 1152, 1155 (5th Cir. 1978) (noting that

"exceeding the scope of the rental agreement would support a jury finding that

[the defendant] intended to steal the car").

Second, Duenas' travel plans were implausible. Duenas told Taylor that he

was planning to move to Kansas, but Duenas was unable to name the town to

which he was moving, stating only that he was going to "the main town." Were

Duenas truly moving to Kansas or even considering such a move, it is unlikely

that he would have rented a car without authority to travel in Kansas. These facts

justifiably raised Taylor's suspicion and more than adequately support the district

court's finding that Duenas' travel plans were not believable. See Santos, 403

F.3d at 1129 ("Implausible travel plans can contribute to reasonable suspicion.");

see also United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir. 1995); United

States v. Sanchez-Valderuten, 11 F.3d 985, 989 (10th Cir. 1993).

Third, Duenas appeared nervous throughout the encounter and, according to

Taylor, "[t]he more I spoke with [Duenas], the more nervous he got." The district

court found that "Duenas acted extremely nervous, out of the ordinary

nervousness that [Taylor] sometimes encounters in making his traffic stops."

This finding is supported by the record. We acknowledge that "nervousness is a

sufficiently common—indeed natural—reaction to confrontation with the police

that unless it is unusually severe or persistent, or accompanied by other, more

- 8 -

probative, grounds for reasonable suspicion, it is 'of limited significance in determining whether reasonable suspicion exists.'" Santos, 403 F.3d at 1127 (quoting United States v. Williams, 271 F.3d 1262, 1268 (10th Cir. 2001)). However, Duenas' nervousness was accompanied by the foregoing circumstances. We agree with the district court that, combined with these two additional factors, the nervousness supported Taylor's decision to detain Duenas until arrival of the canine unit.

Considering that Taylor was allowed "to draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to" him, we conclude that an objectively reasonable suspicion that Duenas was involved in illegal activity properly arose in Taylor's mind. See id. at 1134. The district court's factual findings were not clearly erroneous, and Taylor's decision to detain Duenas pending arrival of the canine unit was reasonable.[2]

---

[2] Duenas relies heavily on our decision in Wood, 106 F.3d 942. In that case, however, only two factors arguably supported reasonable suspicion: the defendant's nervousness and his prior narcotics history. Id. at 948. Wood's travel plans, unlike Duenas' plans, were not "the sort of unusual plans which give rise to reasonable suspicion of criminal activity," because, among other things, Wood had "authority to operate [his rental] car." Id. at 947. Consistent with the above analysis, we explained in Wood that both of the validly considered factors were "of only limited significance in determining whether reasonable suspicion existed," id. at 948, particularly in light of the paucity of other articulable bases to support the detention. Here, by contrast, we have two significant and probative factors, in addition to Duenas' nervousness, that justified the detention. Thus, Duenas' reliance on Wood is misplaced.

## III

**AFFIRMED.**

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge