**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 8, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

v.

ARMANDO SAUZAMEDA-
MENDOZA,

　　　　Defendant-Appellant.

No. 13-2223
(D.C. No. 2:CR-12-00587-RB-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant Armando Sauzameda-Mendoza was indicted for possessing with the intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. He moved to suppress all evidence obtained during a search of his truck and boat trailer following a routine traffic stop. The district court denied his motion. Sauzameda-Mendoza then entered a conditional guilty plea to permit his present appeal from the district court's denial of his motion to suppress. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.

On November 5, 2011, Officer Christopher Alvarez, a K-9 officer with the New Mexico Department of Public Safety, was on patrol in Hidalgo County, New Mexico. While on patrol, he observed a red Dodge pickup truck pull onto Interstate 10 westbound from Highway 80. The truck was towing a boat and appeared to be speeding. Officer Alvarez confirmed through radar that the truck was traveling 50 miles per hour in a 45 mile-per-hour zone. As Officer Alvarez drove behind the truck, he noticed that the vehicle's boat trailer did not have a license plate, in violation of New Mexico law. He then initiated a traffic stop. Officer Alvarez identified the driver of the truck as Roberto Alcuras and the sole passenger and registered owner of the truck as Armando Sauzameda-Mendoza. Officer Alvarez informed Sauzameda-Mendoza and Alcuras that he had stopped them because their boat trailer did not have a license plate. He asked Sauzameda-Mendoza for the trailer's paperwork and Alcuras for his driver's license. Alcuras then accompanied Officer Alvarez to the front bumper of his patrol car.

As Officer Alvarez was writing the citations, he asked Alcuras about his travel plans. Alcuras said that he was from Kansas, had been on vacation in Douglas, Arizona,

2

and was traveling to Benson, Arizona, to return the boat to one of Sauzameda-Mendoza's friends. However, Alcuras could not identify the name of this friend.

Officer Alvarez then walked back to the truck to ask Sauzameda-Mendoza for the truck's registration information. Officer Alvarez also asked Sauzameda-Mendoza about his travel plans. Sauzameda-Mendoza told Officer Alvarez that he was from Kansas, had been working in the area, and was headed to Benson to drop the boat off with a friend. When Officer Alvarez asked Sauzameda-Mendoza for his friend's name, Sauzameda-Mendoza initially said that he was not sure, but then said "Carlos, I think." App. at 167. Officer Alvarez found it suspicious that neither Sauzameda-Mendoza nor Alcuras knew the name of the "friend" to whom they were supposed to deliver the boat.

Officer Alvarez returned to his patrol car to finish writing the citations. He again asked Alcuras about his travel plans. Alcuras reiterated that he was coming from Douglas and going to Benson. Officer Alvarez found the route the men were taking—"northeast on Hwy. 80 to I-10 and then west to Benson"—suspicious because it added nearly 100 miles to their trip and required an additional 90 minutes of driving time. Id. at 167. He also found the route suspicious because it bypassed all border patrol checkpoints and, based on his law enforcement experience, is a route frequently used by drug smugglers. The more direct route from Douglas to Benson—northwest on Highway 80—would have required Sauzameda-Mendoza and Alcuras to go through a border patrol checkpoint.

Officer Alvarez asked Alcuras why he had taken this route. Alcuras explained that he and Sauzameda-Mendoza were not from the area and had taken the wrong road.

3

However, Alcuras had an Arizona driver's license, which had been issued nearly a month earlier, that listed a Douglas, Arizona, address.  Officer Alvarez then asked Alcuras for a second time whether he knew the name of the friend to whom they were supposedly dropping off the boat.  Alcuras said that he did not.

Officer Alvarez completed the two citations and ended the traffic stop.  But as Alcuras was walking back toward the truck, Officer Alvarez called out to him to see if he could ask him a few more questions.  Alcuras said "Yeah."  Officer Alvarez asked Alcuras who owned the boat.  Alcuras said that it belonged to a friend of Sauzameda-Mendoza's and that they had used it to go fishing in San Carlos the week prior.  Officer Alvarez again questioned Alcuras about his travel route.  Alcuras said that he was "off-route" because he "wasn't paying attention" and must have missed the road.  Id. at 169. He explained that he realized he was on the wrong road when he entered New Mexico and that he then looked up directions on his iPhone.  However, Officer Alvarez knew that the area around the state line had "virtually no cellular phone reception."  Id. at 170. When Officer Alvarez asked Alcuras about this, Alcuras said that he was not able to get service in certain spots, but that he had been able to get service farther down the road.

Suspecting that the men were involved in illegal activity, Officer Alvarez asked Alcuras if there were any illegal drugs in the truck or boat.  Alcuras said "No."  Officer Alvarez asked if he could search the truck and boat.  Alcuras responded "Yeah."  Officer Alvarez then approached the truck and asked Sauzameda-Mendoza if he could ask him some questions.  Sauzameda-Mendoza consented and Officer Alvarez asked about his

4

travel plans. Sauzameda-Mendoza explained that they were going from Douglas to Benson, and that he thought they were taking the most direct route. Officer Alvarez found this response suspicious because it contradicted Alcuras's statement that they had gotten lost. Sauzameda-Mendoza further explained that he had taken possession of the boat in Mexico and had used it in Puerto Peñasco, Mexico. He also said that Alcuras had not been with him in Puerto Peñasco and that he had not taken the boat anywhere else. This contradicted Alcuras's statement that they had taken the boat fishing in San Carlos.

Officer Alvarez asked Sauzameda-Mendoza if there were any illegal drugs in the truck or boat. Sauzameda-Mendoza said "No." Officer Alvarez asked if he could search the truck and boat. Sauzameda-Mendoza refused to grant consent. Officer Alvarez told Sauzameda-Mendoza that he was going to run a narcotics detection canine around the truck and boat, and that the result of that canine sniff would determine whether he would seek a warrant. Officer Alvarez then retrieved his narcotics detection dog, Bodo, from the patrol car.

Officer Alvarez has been a certified detection canine handler since September 2008. He has worked with Bodo for approximately two years and he and Bodo have been certified as a narcotics detection team on four separate occasions. As soon as Officer Alvarez and Bodo began walking around the truck and boat, Bodo alerted to the presence of contraband at the rear of the boat by changing his breathing and by "moving his nose up and down in a pronounced fashion." Id. at 173. He then "indicated" the presence of contraband at the rear right panel of the truck by sitting down.

5

Officer Alvarez explained to Sauzameda-Mendoza that because Bodo had alerted to both the truck and boat he was going to call the District Attorney's office to try to obtain a search warrant. After confirming with a Hidalgo County Assistant District Attorney that he had enough information to obtain a warrant, Officer Alvarez told Sauzameda-Mendoza that he had received approval from the District Attorney to get a search warrant and that he was in the process of calling a tow truck. Officer Alvarez also told Sauzameda-Mendoza that he could consent to a search instead. Sauzameda-Mendoza asked how long the search would take. Officer Alvarez replied "as long as it takes." Id. at 174. Sauzameda-Mendoza then told Officer Alvarez to go ahead and search.

Officer Alvarez presented both Alcuras and Sauzameda-Mendoza with consent to search forms. The form identified the property to be searched as "Red 98 Dodge" and "Wht Boat." As Sauzameda-Mendoza was reading the form, he asked Officer Alvarez whether he properly understood the form to say that he had "the right to . . . not give . . . consent?" Id. Officer Alvarez told him "Yes." Sauzameda-Mendoza then asked Officer Alvarez whether he would proceed to secure a warrant if he did not provide his consent. Officer Alvarez said "Yes." Sauzameda-Mendoza then signed the form.

Officer Alvarez, along with another officer who had arrived at the scene, searched the boat. They found numerous bundles of marijuana. Sauzameda-Mendoza and Alcuras were arrested. After Sauzameda-Mendoza was indicted by a grand jury, he moved to suppress all evidence discovered during the search of his vehicle and boat at the traffic stop. The district court denied his motion, finding that (1) the traffic stop was justified at

6

its inception, (2) Officer Alvarez's questions during the stop were permissible, (3) Officer Alvarez's continued detention of Sauzameda-Mendoza and Alcuras after the traffic stop had ended was supported by reasonable suspicion, (4) Sauzameda-Mendoza voluntarily consented to the search, and (5) even without consent, the evidence would have been inevitability discovered. Sauzameda-Mendoza conditionally pleaded guilty and was sentenced to six months' imprisonment and two years' supervised release.

## II.

Sauzameda-Mendoza makes three arguments on appeal. First, he argues that Officer Alvarez lacked reasonable suspicion to extend the traffic stop for a canine sniff. Next, he argues that the consent he provided to search his vehicle and trailer was not knowingly or voluntarily given. Finally, he argues that the marijuana the officers retrieved from the boat would not have been inevitably discovered.

## A.

In reviewing a district court's denial of a motion to suppress, we consider "the evidence in [the] light most favorable to the prevailing party," here the government, and "accept the district court's factual findings unless those findings are clearly erroneous." United States v. Cantu, 87 F.3d 1118, 1120 (10th Cir. 1996). However, "the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo." United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999).

## B.

Sauzameda-Mendoza argues that the district court erred when it found Officer

Alvarez had reasonable suspicion to extend the traffic stop for a canine sniff. "We analyze traffic stops under the principles applicable to 'investigative detentions' set forth by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Doyle, 129 F.3d 1372, 1375 (10th Cir. 1997) (quoted citation shortened). Under Terry, "a traffic stop is reasonable if it is (1) 'justified at its inception' and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Karam, 496 F.3d 1157, 1161 (10th Cir. 2007) (quoting United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998)). Sauzameda-Mendoza does not dispute the reasonableness of the initial stop in which he and Alcuras were pulled over for speeding and for failing to have a license plate on their boat trailer. He does, however, dispute the reasonableness of Officer Alvarez's detention of his vehicle and trailer for a canine sniff.

"An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). During a routine traffic stop, an officer "may request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001). In addition, "an officer may ask questions, whether or not related to the purpose of [the] stop, if they do not excessively prolong the stop." United States v. Simpson, 609 F.3d 1140, 1146 n.1 (10th Cir. 2010). But, "[o]nce an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave." United States v.

8

Villa, 589 F.3d 1334, 1339 (10th Cir. 2009).

Nonetheless, a traffic stop may be expanded beyond the reason for its inception if an officer "has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring," or "if the traffic stop has become a consensual encounter." Caro, 248 F.3d at 1244. Whether an investigative detention is supported by reasonable suspicion "does not depend upon any one factor, but on the totality of the circumstances." Wood, 106 F.3d at 946. "[I]nchoate and unparticularized suspicion[s] or 'hunch[es]' [are] insufficient to give rise to reasonable suspicion." United States v. Fernandez, 18 F.3d 874, 878 (10th Cir. 1994) (internal quotation marks and citation omitted). But, "[c]ommon sense and ordinary human experience" are considered, and "deference is . . . accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions." Wood, 106 F.3d at 946 (internal citation omitted). "[T]he government bears the burden of proving the reasonableness of [the] officer's suspicion." United States v. Kitchell, 653 F.3d 1206, 1219 (10th Cir. 2011).

Here, the district court based its finding that Officer Alvarez had reasonable suspicion to detain Sauzameda-Mendoza on the following factors:

> (1) [T]he Defendant's travel route was a well-known drug trafficking corridor that circumvents a United States Patrol Checkpoint on Hwy. 80W between Douglas and Benson; (2) the Defendant and driver were off course because they were taking a route from Douglas to Benson that added approximately 90 minutes of driving time to the more direct route of Hwy. 80W; (3) [the driver's] explanation regarding his travel route, i.e., that he was not from the area and got lost, was inconsistent with the fact that he had an Arizona Driver's License with a Douglas, Arizona address that had been issued roughly four weeks prior to the stop; (4) the men were stopped less than 100 miles

9

from the U.S./Mexico border; and (5) neither [the driver] nor Defendant . . . were sure of the name of the person to whom they intended to return the boat, even though both subjects said that they were returning the boat to Defendant's "friend."

App. at 183-84. We agree with the district court that the facts surrounding the traffic stop, when viewed in their entirety and in the light most favorable to the government, gave Officer Alvarez reasonable suspicion to extend the traffic stop for a canine sniff.

Because the first two factors are related, we address them together. We have generally held that bizarre travel plans may be considered in the reasonable suspicion analysis. See United States v. Ludwig, 641 F.3d 1243, 1249 (10th Cir. 2011). While a trip from Douglas, Arizona, to Benson, Arizona, standing alone, does not give rise to any sort of suspicion, the additional facts surrounding Sauzameda-Mendoza and Alcuras's travel plans in this case do. Here, rather than taking Highway 80 West, the most direct route to Benson, Sauzameda-Mendoza and Alcuras chose to take Highway 80 East into New Mexico and then I-10 West back toward Benson. This route not only added approximately 100 miles to their trip and required an additional 90 minutes of driving time, but it also enabled Sauzameda-Mendoza and Alcuras to avoid all border patrol checkpoints. Indeed, Officer Alvarez testified that "Highway 80 [East] is the only highway out of Douglas that does not have any Border Patrol checkpoints," and that in New Mexico, Highway 80 is "commonly used [by] . . . drug smugglers . . . to avoid the checkpoints." App. at 38. Collectively, these facts are sufficient to arouse reasonable suspicion and to suggest that "criminal rather than innocent activity is under way."

10

Ludwig, 641 F.3d at 1249; see also United States v. Cheromiah, 455 F.3d 1216, 1221-22 (10th Cir. 2006) (officer had reasonable suspicion to stop a van on known smuggling route that bypassed checkpoints); see also United States v. Arvizu, 534 U.S. 266, 277 (2002) (border patrol agent had reasonable suspicion to believe illegal activity was occurring where vehicle was stopped during a patrol shift change on a "route used by smugglers to avoid [a] checkpoint"). Accordingly, the district court was correct in considering both of these factors in its reasonable suspicion analysis.

We have likewise held that a vehicle's proximity to the border is another factor that may be considered in the reasonable suspicion analysis. See Cheromiah, 455 F.3d at 1221-22 (taking into account that the defendant was stopped approximately 85 miles from the border in its reasonable suspicion analysis); accord United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975) (determining that a vehicle's "proximity to the border" is one factor that "may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area"). In this case, Sauzameda-Mendoza and Alcuras were pulled over "on [Interstate] 10 westbound near milepost 4, a location less than 100 miles from the United States border with Mexico." App. at 165-66. Given how close Sauzameda-Mendoza and Alcuras were to the border and the fact that they began their trip in Douglas, a town right on the border, the district court properly considered this factor in its reasonable suspicion analysis.

Finally, the conflicting and implausible stories Sauzameda-Mendoza and Alcuras gave to Officer Alvarez are also relevant. When asked about their circuitous travel route,

11

Alcuras explained to Officer Alvarez that he "wasn't from [the] area" and "must have taken the wrong road." Id. at 43. Officer Alvarez found this answer suspicious because Alcuras had an Arizona driver's license, "which showed an address out of Douglas." Id. Sauzameda-Mendoza and Alcuras also explained to Officer Alvarez that they were headed to Benson to drop the boat off with a friend of Sauzameda-Mendoza's. However, neither Sauzameda-Mendoza nor Alcuras could confirm the name of this friend. Indeed, when asked for his friend's name, Sauzameda-Mendoza said "Carlos, I think." Id. at 167. "Vague, inconsistent [and] evasive answers" like these are generally considered "supportive of reasonable suspicion" because "[c]onfusion about details is often an indication that a story is being fabricated on the spot." Simpson, 609 F.3d at 1150. Thus, it was appropriate for the district court to consider this information when assessing the evidence and when conducting its reasonable suspicion analysis.

Looking at the totality of the circumstances surrounding the traffic stop, Officer Alvarez had reasonable suspicion to extend the traffic stop for a canine sniff. Sauzameda-Mendoza and Alcuras were stopped less than 100 miles from the U.S.-Mexico border on a stretch of road that is often used by drug smugglers to avoid border patrol checkpoints. They indicated that they were traveling from Douglas to Benson, but had taken a circuitous route that added approximately 100 miles to their trip. They indicated that they were not from the area, but Alcuras had an Arizona driver's license with a Douglas address. Moreover, neither man could identify the "friend" to whom they were dropping off the boat. Collectively, these facts are sufficient to give Officer Alvarez

12

reasonable suspicion of illegal activity, and to enable Officer Alvarez to detain both men in order to subject their vehicle and trailer to a canine sniff.

**C.**

Sauzameda-Mendoza also argues that the district court erred in finding his consent to be knowingly and voluntarily given, and in finding that the evidence would have been inevitably discovered. However, because we conclude that Officer Alvarez had reasonable suspicion to detain Sauzameda-Mendoza and Alcuras in order to subject their truck and trailer to a canine sniff, we need not reach Sauzameda-Mendoza's remaining claims. Once Bodo, Officer Alvarez's narcotics detection dog, alerted on the truck and trailer, Officer Alvarez had probable cause to search both and no longer needed consent or a warrant for the search to be reasonable under the Fourth Amendment.

Under the automobile exception, "[a] warrantless search of an automobile is reasonable if there is probable cause to believe it contains contraband." United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993) (citing United States v. Ross, 456 U.S. 798, 809 (1982)). "[A] canine's alert to the presence of contraband during an exterior sniff of a vehicle gives [an officer] . . . probable cause . . . to search that vehicle's interior." United States v. Forbes, 528 F.3d 1273, 1277 (10th Cir. 2008); see Kitchell, 653 F.3d at 1222 (noting "the well-established principle that a positive alert from a reliable narcotics-detection dog gives rise to probable cause to search a vehicle").

This exception has been applied to trailers as well. See United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999) (holding that once the

13

canine alerted to the exterior of the defendant's trailer, the officer "had probable cause to search the trailer's interior without a warrant"); United States v. Ervin, 907 F.2d 1534, 1539 (5th Cir. 1990) (holding that the warrantless search of a camper-trailer fell within the automobile exception to the warrant requirement).

Accordingly, once Bodo, "a certified and reliable narcotics detection canine," App. at 190, alerted to the presence of contraband in the truck and trailer, Officer Alvarez could search both without obtaining Sauzameda-Mendoza's consent. Likewise, because Officer Alvarez's search did not violate the Fourth Amendment and his seizure of the marijuana was lawful, consideration of the inevitable discovery doctrine is not necessary. See United States v. Romero, 692 F.2d 699, 704 (10th Cir. 1982) (noting that "the inevitable discovery exception [allows] *unlawfully seized* evidence [to be] admissible if there is no doubt that the police would have lawfully discovered the evidence later" (emphasis added)).

## III.

Based on the foregoing analysis, we affirm the district court's denial of Sauzameda-Mendoza's motion to suppress.

Entered for the Court

Mary Beck Briscoe
Chief Judge

14