*1140 TYMKOVICH, Chief Judge,
dissenting.
This case presents a close call on reasonable suspicion. But the essence of qualified immunity is to give government officials protection in resolving close calls in reasonable ways. Because the majority employs a divide-and-conquer analysis specifically rejected by the Supreme Court and because Vasquez cannot identify clearly established law necessary to overcome qualified immunity, I respectfully dissent.
When the defense of qualified immunity is raised, we require the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. Vasquez challenges that his detention beyond the original traffic stop violated the Fourth Amendment. But such detention is permissible where the officer has an “objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring. ...” United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir. 1994).
“[Rjeasonable suspicion is not, and is not meant to be, an onerous standard.” United States v. Pettit, 785 F.3d 1374, 1379 (10th Cir. 2015) (quoting United States v. Kitchell, 653 F.3d 1206, 1219 (10th Cir. 2011)). An officer need only have “a ‘particularized and objective basis for suspecting’ criminal conduct under a totality of the circumstances.” Id. (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).
The majority, in effect, takes the district court finding and concludes that 0 + 0 + 0 cannot = reasonable suspicion. Of course, a series of completely innocent conduct does not create reasonable suspicion. But the Supreme Court instructs us not to employ a “divide-and-conquer analysis” and requires us to consider the “totality of the circumstances.” See United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).
In Arvizu, a particularly instructive case, the Court reversed the Ninth Circuit’s determination that a border patrol agent had no reasonable suspicion to detain a minivan. The Ninth Circuit had independently examined ten factors supporting reasonable suspicion and determined that seven of them should not be given much weight because those factors were each readily susceptible to innocent explanation. Id. at 274, 122 S.Ct. 744. In rejecting this approach, the Court held that even if each factor is consistent with innocent travel, factors when taken together can warrant further investigation. Our cases agree. See, e.g., Pettit, 785 F.3d at 1380 (“We evaluate each of the factors supporting reasonable suspicion separately and in aggregate.”); United States v. Padilla-Esparza, 798 F.3d 993, 999 (10th Cir. 2015); United States v. Santos, 403 F.3d 1120, 1133-34 (10th Cir. 2005); United States v. Quintana-Garcia, 343 F.3d 1266, 1270-71 (10th Cir. 2003).
Under this analysis, no factor can be given a constant weight of zero in a reasonable suspicion equation. See, e.g., Arvizu, 534 U.S. at 275-76, 122 S.Ct. 744 (“We think it quite reasonable that a driver’s slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona).”). Vasquez’s story struck the officers as unusual, and when a police officer encounters a series of unusual facts, each factor no longer carries a weight of zero; together they may provide a “particularized and objective basis” to suspect illegal activity. Id. at 273, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 417-18, 101 S.Ct. 690 (1981)).[1]
*1141 But even assuming a lack of reasonable suspicion, I would still affirm the district court because Yasquez has not pointed to clearly established law. While the precise conduct in question need not have been previously held unlawful, “ ‘the contours of the right’ must be ‘sufficiently clear that a reasonable official’ would understand that what he is doing violates that right.” Romero v. Story, 672 F.3d 880, 889 (10th Cir. 2012) (quoting Dodds v. Richardson, 614 F.3d 1185, 1206 (10th Cir. 2010)). The Supreme Court has recently emphasized that the
dispositive question is whether the viola-tive nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where ... it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confront[ed].
Mullenix v. Luna, — U.S.-, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (internal brackets, citations, and quotations omitted).
Vasquez points to no Supreme Court or Tenth Circuit case with sufficiently analogous facts. He and the majority rely on a case where we held the police lacked reasonable suspicion where the driver “had fast food wrappers and other trash in his car, he had open maps out, he misidentified the place where he picked up his rental car, and he described somewhat expensive travel plans despite being temporarily employed.” United States v. Toledo, 139 F.3d 913 (10th Cir. 1998) (unpublished table opinion) (describing the holding of United States v. Wood, 106 F.3d 942 (10th Cir. 1997)).
I disagree that Wood clearly defines the absence of reasonable suspicion here, especially given the multiple times we have affirmed district court decisions finding reasonable suspicion while citing and distinguishing Wood. Consider three examples:
(1) United States v. $49,000.00 in U.S. Currency, More or Less, 208 Fed.Appx. 651 (10th Cir. 2006). Officers pulled over an afternoon driver on Interstate 70 in Kansas. The driver lived in Los Angeles but rented a car from Detroit, was nervous, and had a prior arrest for possession of marijuana with intent to distribute.
(2) Toledo, 139 F.3d 913. Officers also pulled over an afternoon driver on Interstate 70 in Kansas. The driver gave inconsistent accounts of his travel plans to explain why he was headed to North Carolina but the rental car needed to be returned in California. The car smelled of air freshener, the defendant had a prior drug conviction, and acted nervously.
(3) United States v. Williams, 271 F.3d 1262 (10th Cir. 2001). Again, this case involved an afternoon driver on Interstate 70 in Kansas. The driver was nervous, had a two-way, short-range radio despite attesting to be traveling alone, was not named in *1142 the rental agreement, and was traveling from a drug-source area.
Our treatment of Wood in this line of cases “reveal[s] the hazy legal backdrop,” against which Officers Jimerson and Lewis acted. Mullenix, 136 S.Ct. at 309. The officers encountered a sufficiently different factual scenario than in Wood, especially in light of almost twenty years of cases distinguishing it.
Most notably, the two cases differ in the degree of unusual travel plans. The court in Wood declined to give any weight to Wood’s “unusual” travel plans- — driving a rental car from Sacramento to Topeka. 106 F.3d at 946-47. As a preliminary matter, this reasoning puts Wood on shaky ground. In Wood, we “stripped] away the factors which must be disregarded because they are innocuous,” 106 F.3d at 948, which is precisely what the Supreme Court warned against in Arvizu. Regardless, Vasquez’s travel plans are sufficiently distinct as to allow a reasonable officer to be more suspicious. Vasquez asserted he was moving, but no items in his car aligned with his story. Vasquez was driving in the middle of the night, apparently sleeping in his car. Vasquez was driving a newly-purchased twenty-year-old car, despite owning a new car, and had a flimsy, even implausible, explanation as to why.[2]
Because reasonable officers may differ regarding whether Vasquez’s detention violated the Fourth Amendment, I would affirm the district court’s finding of qualified immunity.

. The majority particularly objects to giving weight to a driver’s route from a drug-source *1141 area to a drug-market area, especially in the aftermath of legalized marijuana. I appreciate this concern. Standing alone, traveling from a drug-source area is simply insufficient to establish reasonable suspicion and we have held it is "at best, a weak factor” in contributing to reasonable suspicion. United States v. Williams, 211 F.3d 1262, 1270 (10th Cir. 2001). Although here I would not find travel from a slate that had legalized marijuana suspicious, we should recognize, especially near borders where smuggling is common, law enforcement can discern patterns in drug trafficking. See Arvizu, 534 U.S. at 275-76, 122 S.Ct. 744 (reasoning that driver and passenger behavior near the Mexican border may be assessed with regard to location).

. The majority characterizes that Vasquez told Trooper Lewis he bought the newer car for his girlfriend, which explains why he was driving the older one. But the transcript shows that Vasquez told Trooper Lewis he bought the older car for his girlfriend, which raised Trooper Lewis’s suspicions.
[Trooper Lewis]: So, you have a 2011 Chevy Malibu too?
[Vasquez]: Yeah.
[Trooper Lewis]: Okay. And how come you’re driving the older car across the country?
[Vasquez]: What’s that?
[Trooper Lewis]: How come you’re driving the older one across the country?
[Vasquez]: Because I bought it for my girlfriend.
[Trooper Lewis]: This? Oh, okay.
R„ Vol. I at 25-26.