**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

$49,000.00 in UNITED STATES
CURRENCY, More or Less,

  Defendant,

TIMOTHY LEWIS HEFFERNAN,

  Claimant-Appellant

No. 05-3253
(D.C. No. 02-1426-WEB)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

---

On November 27, 2002, the United States filed in the United States District Court

for the District of Kansas a Complaint for Forfeiture In Rem against $49,000.00 United

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan 1, 2007).

States Currency, More or Less, pursuant to 21 U.S.C. § 881(a)(6).[1]  In support of that complaint, a Declaration of one Michael D. Keesling, a Task Force Agent of the Drug Enforcement Administration, was attached.  On March 17, 2003, Timothy Lewis Heffernan (the appellant) filed a Verified Claim in the forfeiture proceeding, wherein he claimed "an ownership and/or a possessory interest in, and the right to exercise dominion and control over, all or part of the defendant property."  He also filed an answer to the Government's Complaint for Forfeiture In Rem, coupled with a demand for trial by jury.

On June 9, 2003, the appellant filed in the district court a motion to suppress, asking for an "order suppressing all evidence obtained during a traffic stop of his vehicle which occurred on 30 July 2002 and for a further order dismissing this case and returning the defendant property to Claimant."  In support of the motion to suppress, counsel attached a declaration of the appellant.  In due time, the United States filed a response to

---

[1] 21 U.S.C. §881(a) reads as follows:
    §881.  Forfeitures
     (a) Subject property
        The following shall be subject to forfeiture to the United States and no property right shall exist in them:
         (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

* * * * *

         (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

claimant's motion to suppress and to dismiss. After an evidentiary hearing held on November 18, 2003 (a transcript of the evidence adduced at that hearing is not a part of the record on appeal), the district court entered a 15-page memorandum and order (which is a part of the record on appeal), in which it denied appellant's motion to suppress and to dismiss, and set forth its reasons therefor. On June 17, 2005, pursuant to an agreement between the government and appellant, the district court entered a Final Order of Forfeiture, "forfeiting defendant [$49,000.00] to the United States" but reserving the right of the appellant to appeal the district court's order denying his motion to suppress. The appellant then filed a timely notice of appeal.

## FACTS

On July 30, 2002, the appellant, while driving west on Interstate 70 in Ellis County, Kansas, was stopped at or about 3:45 p.m. by one John D. Rule, a Trooper for the Kansas Highway Patrol (KHP), for a traffic violation, i.e. failure to maintain a single lane. Trooper Rule had been a KHP Trooper since 1991, a dog handler since 1997, and a drug dog instructor since 2001. Trooper Rule was also trained in criminal interdiction techniques and was assigned to criminal interdiction duties, which typically involved responding to requests from other officers in the area for a narcotics detection canine. At the time of the suppression hearing, Trooper Rule had been involved in some 400 so-called "large drug seizure" cases wherein 230 of those seizures resulted in the seizure of over 20,000 pounds of controlled substances. Trooper Rule had also been involved in currency seizures for drugs sold and delivered totaling over $4,000,000.00, half of which

had been actually seized by him. In this general regard, the district court opined that Trooper Rule had "extensive experience investigating drug trafficking." The district court found that Trooper Rule also knew that I-70 was frequently used by drug smugglers to transport drugs from the southwestern United States to northeastern states, as well as to thereafter transport the proceeds from drug trafficking back to the southwest. He further knew that persons involved in drug trafficking on occasion would travel one-way by air to their destination, then rent a vehicle for the return trip in order to transport the drugs by air, and bring the drug proceeds back by auto, even though such was more expensive than going round-trip by air.

As stated, Trooper Rule stopped the vehicle driven by appellant on I-70 in Ellis County, Kansas, for a lane violation. Appellant was the only one in the car. The ensuing detention was of a relatively short duration, estimated to have been about five to ten minutes from the time of the stop to the time Trooper Rule searched the trunk of appellant's car and seized the currency. After the initial stop, Trooper Rule first asked appellant for his driver's license and appellant produced a valid California driver's license and a valid rental contract in his name for the car he was driving. When Trooper Rule noted that the rental contract indicated the car was to be returned in Detroit, where it was rented, rather than Los Angeles where appellant resided, appellant hesitated and said it "must have been a mistake." In response to inquiry by Trooper Rule, appellant said he had flown to Detroit to attend a friend's wedding and decided to rent a car and drive back to Los Angeles and enjoy the scenery en route home. Trooper Rule said the appellant

appeared "more nervous" than a person on a "typical traffic stop," as was indicated by his "shaking hands."

Trooper Rule then returned to his vehicle to write a warning ticket, at which time he radioed KHP for a criminal history check on appellant and was informed that the appellant had a prior arrest for possession of marijuana with an intent to distribute. At about that point in time, Trooper Rule decided he would first ask appellant for consent to search his automobile and if the request was denied, he would then conduct a "dog sniff" with his dog "Butkus," which was in the patrol car. As he was returning appellant's driver's license and car rental agreement, together with a warning ticket, Trooper Rule asked if appellant would answer a few more questions. Appellant replied "okay," and Trooper Rule then asked appellant if he had any drugs, weapons or large amounts of cash in the vehicle. Appellant said there were none. Trooper Rule then asked for permission to look in the vehicle, but appellant declined. Trooper Rule then told the appellant that he was going to "work" his dog around the car, and directed the appellant to step out of his vehicle. As concerns Butkus, Trooper Rule stated that Butkus' success rate in drug detection was over 90%.

Butkus worked around appellant's car and then "alerted" to the trunk of appellant's car, indicating to Trooper Rule the odor of a controlled substance. Trooper Rule then took Butkus back to the patrol car and, returning to appellant's car, then asked appellant if he had any drugs in the car. Appellant said he did not. Trooper Rule then obtained the keys from appellant and opened the trunk to his vehicle. After a brief search of the trunk,

Trooper Rule found "a bag behind the carpet lining that contained vacuum-sealed packages of U.S. currency totaling $49,000.00." When asked about the money, appellant hesitated initially, but said the money was his and that he "made the money selling cars." In this connection, appellant stated that he had taken the $49,000.00 in cash with him on his flight from Los Angeles to Detroit because he didn't want to leave the money at home, and because he thought he might buy a car in Detroit.

## DISCUSSION

Initially, there was a suggestion that Trooper Rule's "stop" of the appellant's vehicle was pretextual. However, that matter is not an issue on appeal, i.e., it is now conceded that the stop of appellant did not offend appellant's Fourth Amendment right to be free of "unreasonable searches and seizures." Such being the case, it is well established that following a lawful stop of a motorist on a public highway for a traffic violation, the officer making the stop may detain the driver and check his driver's license, car registration or rental agreement, if any, and generally inquire about the driver's travel plans. This was done in the instant case. The officer then returned to his patrol car and, as he was preparing a warning ticket, ran a criminal history check on the driver. Such also does not constitute a "detention" for Fourth Amendment purposes. Trooper Rule then returned to appellant's automobile and inquired as to whether appellant would answer a few more questions. Appellant answered "okay." Thus, their "encounter" then became "consensual," and there still was no "detention." When Trooper Rule asked appellant whether he could look in appellant's vehicle, appellant said "no." According to

counsel, that was the point in time when appellant was unlawfully "detained" for Fourth Amendment purposes. As the district court noted, it thereafter took about three minutes before Trooper Rule got Butkus from his car, worked Butkus around appellant's car and the dog alerted to the trunk area. At this point, as we understand it, counsel agrees that Trooper Rule had probable cause to search the trunk. Thus the precise issue on appeal, as framed by counsel, is whether Trooper Rule had reasonable suspicion of criminal activity sufficient to "detain" appellant for three minutes while he ran Butkus around the outside of appellant's car and Butkus alerted to the trunk area. On the record, we agree with the district court that Trooper Rule at that point in time did have a "reasonable suspicion" of criminal activity.

Counsel frames the only issue involved in this appeal as follows:

> The sole issue presented for review is whether the District Court erred in denying Claimant-Appellant Timothy Heffernan's Fourth Amendment Motion to Suppress in connection with the search of his vehicle and the scope of his detention. The district court found that the search and detention were justified because there was an objectively reasonable suspicion of illegal activity justifying a prolonged detention after a routine stop of Appellant.

As previously stated, there was some suggestion that this was a pretextual stop. That is not involved in the present appeal. Further, once Butkus "alerted" to the trunk of appellant's car, it is apparently agreed that Trooper Rule then had probable cause to believe there was "criminal activity" afoot, although it could then be argued that the search of the trunk and the seizure of the currency were the "fruit of the poisonous vine,"

i.e. the "fruit" of the unlawful detention. Also, it is well established that when a police officer stops a vehicle for a traffic violation, the ensuing detention for the purpose of checking the driver's license, automobile registration, travel plans, writing a traffic ticket and returning it to the driver is a "lawful detention." So, in the instant case, when Trooper Rule came back to appellant's automobile with a warning ticket, there had been no "unlawful detention." When Trooper Rule then asked appellant if he could ask a few more questions and appellant consented thereto, there ensued a "consensual" encounter. When appellant answered Trooper Rule's inquiry as to whether appellant had drugs or money in his car and the latter answered in the negative, there still had been no unlawful detention. Thus, any "unlawful detention" started when Trooper Rule, reacting to appellant's negative answer to his request to "look" in the vehicle, determined to run Butkus around the vehicle. And as noted, from that point in time, until Butkus "alerted" to the trunk of the car, was apparently about two to three minutes, certainly not a "prolonged detention."

Counsel for the appellant states that his "recitation of the facts" is based on the findings made by the district court in its denial of appellant's motion to suppress. Accordingly, we take that to mean that counsel concedes that the district court's findings of fact are supported by evidence adduced at the evidentiary hearing on the motion to suppress, but disagrees with the district court's conclusion that such facts, as found by the court, support its ultimate determination that at that point in time, Trooper Rule had such a reasonable suspicion of criminal activity as would justify a brief investigative detention

- 8 -

which would include working Butkus around the exterior of appellant's car, and took only three minutes, or less.

We should also note that on appeal, there is no suggestion that the $49,000.00 found in the trunk actually belonged to appellant or that the currency did not come within 21 U.S.C. § 881(a)(6) as being "moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . ." The only issue is whether the "search and seizure" was the result of what counsel characterizes as a "prolonged detention," which violated the "reasonableness" requirement of the Fourth Amendment. In this connection, we note, as did the district court, that Trooper Rule had Butkus with him at the scene of the stop, to the end that there was no delay to call in a "canine sniffer" from police headquarters.

On appeal, counsel's sole argument is that under *United States v. Wood,* 106 F.3d 942 (10th Cir. 1997), the district court erred in denying appellant's motion to suppress. *Wood* was a criminal case, and it is correct that in *Wood* we, in reversing the district court's judgment, held that the court erred in its denial of a motion to suppress. It is also correct that the "facts" in the instant case are quite similar to the facts in *Wood.* However, the district court in the present case concluded, as do we, that there are additional facts in the present case, not present in *Wood*, which justified the district court's denial of appellant's motion to suppress. Like the district court, we are impressed with the training and experience that Trooper Rule possessed, and used, in the performance of his primary police assignment, which was interdicting drug trafficking on I-70 in western Kansas. In

this connection, the district court observed that Trooper Rule's testimony was "based on years of experience and a multitude of drug seizures, and indicated that claimant's travel arrangement was out of the ordinary for most people but matched a recurrent method of travel used by drug couriers." The court further noted that the facts giving rise to a "reasonable suspicion" of criminal activity need not rule out the possibility of innocent conduct. *United States v. Sokolow,* 490 U.S. 1, 9 (1989). Also, we would note that, unlike the present case, the officer who stopped Wood did not have a dog with him and had to have the dog brought from outside to the scene of the stop. The "detention" in the instant case was said to be only two to three minutes. In *Wood*, the illegal detention was longer, possibly much longer.

It has long been the rule that the facts of a given case should not be considered in "isolation" and that the "totality" of facts and circumstances should be considered in deciding whether an officer had such "reasonable suspicion" as would justify a short detention. Subsequent to *Wood,* the Supreme Court in *United States v. Arvizu*, 534 U.S. 266, 273 (2002) reemphasized that reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." In this regard, the Supreme Court in *Arvizu* at page 274 stated that "[A]lthough each of the series of acts was 'perhaps innocent in itself,' we held that, taken together, they 'warranted further investigation'," citing *Terry v. Ohio,* 392 U.S. 1, 22 (1968).

In sum, we are in accord with the district's court holding that the "totality of the

circumstances" in the present case gave rise to such a "reasonable suspicion of criminal activity" as would support the detention of appellant by Trooper Rule for about ten minutes.

Judgment affirmed.

Entered for the Court,


Robert H. McWilliams
Circuit Judge

05-3253, *United States v. $49,000 in U.S. Currency*
**LUCERO**, **J**., dissenting.


Because I find this case indistinguishable from United States v. Wood, 106

F.3d 942 (10th Cir. 1997), I respectfully dissent.

The district court found reasonable suspicion based on the following facts:

(1) Heffernan flew from Los Angeles to Detroit and rented a car to drive back; (2)

Such travel plans are used by drug couriers; (3) Interstate 70 is a known drug

route; (4) Los Angeles is a known drug source; (5) Heffernan was nervous and his

hands were shaking; (6) The car rental agreement indicated that the car was to be

returned in Detroit, but Heffernan said he was going to return it in Los Angeles;

and (7) Heffernan had been arrested previously on a drug charge.

In Wood, this Court found no reasonable suspicion in an essentially

identical scenario. Terry Wood was stopped by a Kansas Highway Patrol trooper

while traveling on Interstate 70. 106 F.3d at 944. He was extremely nervous –

his breathing was rapid and his hands were trembling. Id. Wood indicated that

he had flown from Topeka to Sacramento for a vacation and decided to rent a car

to drive back. Id. Although the agreement stated that the car was rented and due

to be returned in Sacramento, Wood said that he rented it in San Francisco and

was to return it in Topeka. Id. The trooper ran a criminal background check and

found that Wood had been previously arrested on a felony narcotics charge. Id.

At that point the trooper initiated the non-consensual canine search that we

determined was unconstitutional. Id. At trial, the trooper also testified that California was a known source state for narcotics. Id. at 947.

Trooper Rule's testimony that Interstate 70 is a drug route and that drug smugglers frequently fly one way and return by car does not distinguish the present case from Wood. It was not the factual finding that Wood's plans were "unlikely or implausible" that the Wood panel rejected, rather it was the legal conclusion that such travel plans provided reasonable suspicion under the circumstances. Id. at 946-47 ("We disagree with the district court's legal conclusion that Mr. Wood's travel plans were the sort of unusual plans which give rise to reasonable suspicion of criminal activity.").

Similarly, the fact that Trooper Rule had a drug dog with him, making the stop much shorter, is immaterial. The length of the stop is not relevant in determining whether reasonable suspicion existed at the inception of the detention. See Terry v. Ohio, 392 U.S. 1, 19-20 (1968) ("[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one – whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.").

For these reasons, I respectfully dissent.