**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 23, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

PETER L. VASQUEZ,

     Plaintiff - Appellant,

v.

DAX K. LEWIS; RICHARD JIMERSON,

     Defendants - Appellees.

No. 14-3278

———————————————

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:12-CV-04021-DDC-JPO)**
———————————————

Johnny Lombardi, Lomardi Law, LLC, Denver, Colorado, for Plaintiff-Appellant.

Dwight R. Carswell, Assistant Solicitor General (M. J. Willoughby, Assistant Attorney General, with him on the brief), Office of the Attorney General Derek Schmidt, Topeka, Kansas, for Defendants-Appellees.

———————————————

Before **TYMKOVICH**, Chief Judge, **LUCERO** and **BACHARACH**, Circuit Judges.

———————————————

**LUCERO**, Circuit Judge.

———————————————

     This case asks us to determine whether, under the totality of circumstances,

Kansas Highway Patrol Officers Richard Jimerson and Dax Lewis (the "Officers")

had reasonable suspicion to detain and search the vehicle of Peter Vasquez. In

particular, this case presents the question of what weight to afford the state

citizenship of a motorist in determining the validity of a search. Vasquez alleges that after stopping him for a traffic violation, the Officers detained him and searched his car without reasonable suspicion. As justification, the Officers assert, among other indicators detailed herein, Vasquez was a citizen of Colorado, driving alone on Interstate 70 from Colorado through Kansas, in the middle of the night, in a recently purchased, older-model car.

The district court concluded the Officers were entitled to qualified immunity because Vasquez's asserted right was not clearly established. We disagree. We conclude that the Officers acted without reasonable suspicion and violated clearly established precedent. In particular, we conclude that the Officers impermissibly relied on Vasquez's status as a resident of Colorado to justify the search of his vehicle. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand to the district court for further proceedings.

## I

On December 16, 2011, the Officers saw Vasquez's 1992 BMW sedan driving eastbound on I-70 in Wabaunsee County, Kansas. Jimerson could not read Vasquez's temporary tag, which was taped to the inside of the car's tinted rear window. Because of this, Jimerson turned on his emergency lights and Vasquez pulled to the side of the road. Jimerson approached the car, noted that Vasquez was its sole occupant, and observed blankets and a pillow in the front passenger seat and back seat of the car. Based on the arrangement of the back seat, Jimerson thought something large was obscured under the blankets, and he asked Vasquez if anyone

2

else was in the car. Vasquez told him no. Jimerson then asked Vasquez where he was heading and Vasquez responded, "Elkton, Maryland." Vasquez also told Jimerson that he was from Colorado originally, but had just moved to Maryland. Jimerson asked whether Vasquez had any family in Maryland to which Vasquez responded, "Just my daughter." Jimerson then took Vasquez's driver's license and proof of insurance and returned to the patrol car.

In the car, Jimerson told Lewis that Vasquez was notably nervous and that there were items covered in the front and back seat of the car. Jimerson sent Lewis to check on Vasquez, to "see how nervous he [was]" and to "get a feel for him." Upon returning, Lewis told Jimerson that Vasquez "look[ed] all scared to death." Jimerson then checked Vasquez's proof of insurance which indicated Vasquez also had insurance for two newer cars. Jimerson, suspecting Vasquez was transporting illegal drugs, called Trooper Jason Edie to bring a trained drug dog.

Lewis returned to Vasquez and asked where he worked. Vasquez responded "We own a store called Boutiques at Brighton." Lewis also asked why Vasquez was not driving one of the newer cars listed on his proof of insurance. Vasquez stated that he bought the newest car for his girlfriend. Further, Vasquez told Lewis that he was moving to Maryland, which prompted Lewis to ask "Where's all the stuff if you're moving?" Vasquez replied that he already had moved most of his belongings.

After issuing a warning and walking away, but before getting back into his patrol car, Lewis returned and inquired if he could ask a couple more questions, to which Vasquez consented. Lewis asked if there were any drugs in the vehicle, which

3

Vasquez denied. Lewis then asked if he could search the car and Vasquez refused. After the refusal, Lewis said that he suspected Vasquez was "probably involved in a little criminal activity here" and detained him. Trooper Edie arrived with the drug dog about fifteen minutes later. The Officers' subsequent search of the vehicle did not reveal anything illegal.

On February 28, 2012, Vasquez filed this lawsuit against the Officers under 42 U.S.C. § 1983, arguing that they violated his Fourth Amendment rights by detaining him and searching his car without reasonable suspicion. The district court initially denied the Officers' motion to dismiss, concluding that Vasquez had stated sufficient facts in his complaint to properly allege a violation of his Fourth Amendment rights. However, after discovery, the district court granted the Officers' motion for summary judgment on the basis of qualified immunity. It held that Vasquez failed to show that the Officers' conduct violated clearly established law, and as such, he could not overcome their immunity from suit. Vasquez timely appealed.

## II

We review the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Yousuf v. Cohlmia, 741 F.3d 31, 37 (10th Cir. 2014). To overcome qualified immunity, a plaintiff must show: (1) a defendant violated his constitutional rights; and (2) it was clearly established at the time of the violation that such actions violated that right. Foote v. Spiegel, 118 F.3d 1416, 1424 (10th Cir. 1997).

4

**A**

"The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quotation omitted). To determine whether a traffic stop constituted an unreasonable seizure, we consider: (1) whether the stop was justified at its inception; and (2) whether "the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997).

An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope must be carefully tailored to its underlying justification. Id. Absent the detainee's valid consent, the scope or duration of an investigative detention may be expanded beyond its initial purpose only if the detaining officer, at the time of the detention, has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Lambert, 46 F.3d 1064, 1069 (10th Cir. 1995) (quotation omitted). The existence of reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances. Id. Officers may rely on common sense and ordinary human experience, and we avoid second-guessing a law enforcement officer's judgment. United States v. Melendez–Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994).

5

**1**

This Court has repeatedly admonished law enforcement that once an officer has been assured that a temporary tag is valid, he "should . . . explain[] to Defendant the reason for the initial stop and then allow[] her to continue on her way without requiring her to produce her license and registration." United States v. Edgerton, 438 F.3d 1043, 1051 (10th Cir. 2006); see also United States v. Pena-Montes, 589 F.3d 1048, 1055 (10th Cir. 2009) (the discovery of facts resolving the initial purpose of a stop "wholly dispel[s] . . . reasonable suspicion"); United States v. McSwain, 29 F.3d 558, 561-62 (10th Cir. 1994) (officers improperly detained a driver and searched a vehicle long after the initial purpose of a stop was completed).

The Officers argue their observations other than the car's license plate justified extending the length of the seizure. See United States v. Clarkson, 554 F.3d 1196, 1201 (10th Cir. 2009) ("The traffic stop may be expanded beyond its original purpose if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity." (quotation omitted)). But Vasquez challenges only the drug dog sniff and subsequent search of his car. Therefore, we consider only whether Vasquez's continued detention after he refused the search and the subsequent search of his car violated his constitutional rights.

**2**

We now turn to whether the Officers had reasonable suspicion to justify the search of Vasquez's car. They argue the following factors created reasonable suspicion: (1) Vasquez was driving alone late at night; (2) he was travelling on I-70,

6

"a known drug corridor"; (3) he was from Colorado and was driving from Aurora, Colorado, "a drug source area"; (4) the back seat did not contain items the Officers expected to see in the car of someone moving across the country; (5) the items in his back seat were covered and obscured from view; (6) he had a blanket and pillow in his car; (7) he was driving an older car, despite having insurance for a newer one; (8) there were fresh fingerprints on his trunk; and (9) he seemed nervous.[1] Such conduct, taken together, is hardly suspicious, nor is it particularly unusual.[2]

Though we analyze these facts under the totality of the circumstances, Arvizu, 534 U.S. at 273, we first note which factors have less weight in our analysis. We start with the most troubling justification: Vasquez's status as a resident of Colorado. The Officers rely heavily on Vasquez's residency because Colorado is "known to be home to medical marijuana dispensaries." But we find this justification, in isolation or in tandem with other considerations, unconvincing. As we have said previously, "that the defendant[] [was] traveling from a drug source

---

[1] The Officers also argue that Vasquez gave vague or inconsistent answers to questions about his travel plans. However, the Officers do not explain what these answers were or why they were contradictory. On reviewing the record, which contains a video recording of the interactions between the Officers and Vasquez, we cannot find anything even arguably inconsistent in Vasquez's answers.

[2] Neither the dissent nor the Officers explain how these factors, taken together, indicate suspicious behavior. The Officers instead recite them as a list of unrelated facts. But officers must explain why the factors, together, create "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Lambert, 46 F.3d at 1069 (quotation omitted). As the Supreme Court has reminded the circuit courts, we should not and cannot review these factors in isolation. Arvizu, 534 U.S. at 273. Thus, officers must explain why the factors considered together are suspicious, and not simply recite isolated factors, leaving it to the courts to glean how they create reasonable suspicion.

7

city—or . . . a drug source state—does little to add to the overall calculus of suspicion." United States v. Guerrero, 472 F.3d 784, 787-88 (10th Cir. 2007). Such a factor is "so broad as to be indicative of almost nothing." Id. at 787. Moreover, our fellow circuits have concluded the state of residence of a detained motorist is an "extremely weak factor, at best" in the reasonable suspicion calculus because "interstate motorists have a better than equal chance of traveling from a source state to a demand state." United States v. Beck, 140 F.3d 1129, 1138 & n.3 (8th Cir. 1998) (collecting cases and noting that the government has argued that almost every major city in the United States is a drug source area). Currently, twenty-five states permit marijuana use for medical purposes, with Colorado, Alaska, Oregon, Washington, and Washington, D.C. permitting some recreational use under state law.[3] Thus, the Officer's reasoning would justify the search and seizure of the citizens of more than half of the states in our country. It is wholly improper to assume that an individual is more likely to be engaged in criminal conduct because of his state of residence, and thus any fact that would inculpate every resident of a state

_____

[3] See Alaska Stat. §§ 17.37 et seq., 17.38 et seq.; Ariz. Rev. Stat. §§ 36-2801 et seq.; Cal. Health & Safety Code § 11362.5; Colo. Rev. Stat. §§ 12-43.3-101 et seq., 18-18-406.3, 25-1.5-106; Colo. Const. art. XVIII, § 16(3); Conn. Gen. Stat. §§ 21a-408 et seq.; Del. Code. tit. 16 §§ 4901a et seq.; D.C. Code §§ 7-1671.01 et seq., 48-9043.01; Haw. Rev. Stat. §§329-121 et seq.; 410 Ill. Comp. Stat. 130/1 et seq.; Me. Stat. 22 § 2383-B; Md. Code, Health-Gen. §§ 13-3301 et seq.; Mass. Gen. Laws. ch. 94C, §§ 1-2 et seq.; Mich. Comp. Laws §§ 333.26421 et seq.; Minn. Stat. §§ 152.21 et seq.; Mont. Code §§ 50-46.301 et seq.; Nev. Rev. Stat. §§ 40.453A et seq.; N.H. Rev. Stat. §§ 126-X et seq.; N.J. Stat. §§ 24:6I et seq., 45:1-45.1; N.M. Stat. §§ 26-2b et seq.; N.Y. Pub. Health Law §§ 3360 et seq.; Ohio Rev. Code §§ 3796.19 et seq. (effective Sept. 8, 2016); Or. Rev. Stat. §§ 475.300 et seq., 475.864; 21 R.I. Gen. Laws §§ 28.6 et seq.; 35 Pa. Stat. §§ 10231.101 et seq.; Vt. Stat. tit. 18, §§ 4472 et seq.; Wash. Rev. Code. §§ 69.51A et seq., 69.50.4013.

cannot support reasonable suspicion. Accordingly, it is time to abandon the pretense that state citizenship is a permissible basis upon which to justify the detention and search of out-of-state motorists, and time to stop the practice of detention of motorists for nothing more than an out-of-state license plate.

And we cannot think of a scenario in which a combination of otherwise innocent factors becomes suspicious because the individual is from one of the aforementioned twenty-five states or the District of Columbia. Even under the totality of the circumstances, it is anachronistic to use state residence as a justification for the Officers' reasonable suspicion. Absent a demonstrated extraordinary circumstance, the continued use of state residency as a justification for the fact of or continuation of a stop is impermissible.

Some other factors also weigh little in our totality of the circumstances analysis. "[W]e have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on . . . nervousness . . . as a basis for reasonable suspicion . . . must be treated with caution." Wood, 106 F.3d at 948 (quotation omitted). Moreover, the Officers' reasoning is contradictory at points. Officer Jimerson claimed that Vasquez's car contained items that were covered by blankets, but Officer Lewis found suspicious that the car was uncharacteristically empty and lacking in sundries common for someone moving cross-country. We do not give much weight to these seemingly contradictory facts. And that Vasquez was driving on I-70 does not make his otherwise innocent conduct suspicious. I-70 is a major corridor between Colorado and the East Coast. It could

9

equally be said that it is suspicious to <u>not</u> drive from Colorado to Maryland along I-70.

In sum, Vasquez's conduct does not create reasonable suspicion. What we have here is a driver traveling from Colorado to Maryland, on a major interstate; in an older car despite owning a newer car; with blankets and a pillow obscuring items in the back seat; who did not have items visible that an officer expected to see; and who was and continued to be nervous when pulled over by officers late at night. Such conduct does not raise an inference of reasonable suspicion. Thus, we conclude that the Officers violated Vasquez's Fourth Amendment rights in searching his car.

**B**

We next turn to whether it was clearly established, at the time of the incident, that the Officers' actions violated Vasquez's constitutional rights. "A right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation." <u>Maresca v. Bernalillo Cty.</u>, 804 F.3d 1301, 1308 (10th Cir. 2015) (quotation omitted). Generally, "this means that there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." <u>Id.</u> (quotation omitted).

We have previously held, under strikingly similar circumstances, that an officer—in fact, one of the officers before us now—did not have reasonable suspicion to further detain a defendant after issuing a speeding warning. <u>Wood</u>, 106 F.3d at 944, 948. In <u>Wood</u>, Officer Jimerson stopped Wood for a routine traffic

10

violation.  Id. at 944.  After issuing a warning, Jimerson told Wood he was free to leave, but then quickly inquired if he could ask Wood a few questions, to which Wood agreed.  Id.  Jimerson asked if Wood had any narcotics or weapons, and was told no.  Id.  Despite this, Jimerson asked for Wood's consent to search the car, and after it was denied, Jimerson "detain[ed] the car and its contents in order to subject it to a canine search."  Id.  Jimerson justified his detention of Wood based on his observation that the he was "extremely nervous," that the car had "trash on the floor, including sacks from fast-food restaurants" and "open maps in the passenger compartment," that the car was rented, and that Wood previously had been arrested for drug possession.  Id. at 944, 946-48.  Jimerson also found Wood's travel plans suspicious because the car was rented in a different city than the one Wood indicated, and because, even though Wood was unemployed, he stated he was returning from a vacation in California.  Id. at 946-47.  Jimerson additionally raised some concern about California being a drug source state.  Id. at 947.  We held that Jimerson's stated reasons did not rise to the level of reasonable suspicion, and thus detaining Wood after issuing the warning violated his Fourth Amendment rights.  Id. at 948.

In both cases, Jimerson detained an individual because:  he thought the car was unusual (Vasquez's older car and Wood's rented car); the car had "unusual" but typical items in it (Vasquez's items covered by blankets and Wood's trash wrappers and maps); and the driver was nervous, leaving a drug source state, and passing through Kansas.  The facts of these cases are almost indistinguishable.

11

The district court erred in concluding that the differences between Wood and this case were significant.[4]  Wood "place[s] the statutory or constitutional question beyond debate" and provides "contours [that] are sufficiently clear that a reasonable offic[er] would understand that what he is doing violates that right."  Carroll v. Carman, 135 S. Ct.  348, 350 (2014).  Thus, at the time of the detention, it was clearly established that the Officers did not have reasonable suspicion based upon the articulated circumstances.

## III

For the foregoing reasons, we **REVERSE** the judgement of the district court and **REMAND** for further proceedings not inconsistent with this opinion.[5]

---

[4] In the alternative, the Officers argue Wood was overruled by the Supreme Court in Arvizu, 534 U.S. 266.  Specifically, they cite an unpublished opinion of this court, United States v. $49,000.00 in U.S. Currency, More or Less, 208 F. App'x 651 (10th Cir. 2006) (unpublished), to claim we recognized this change in the law.  But this is incorrect.  As we said in $49,000 in U.S. Currency, "the Supreme Court in [Arvizu] reemphasized that reviewing courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."  Id. at 656 (quotation omitted) (emphasis added).  Arvizu did not change our Fourth Amendment analysis.  Further, the panel in $49,000 in U.S. Currency did not conclude that Wood had been overruled, but distinguished it on specific relevant facts.  Compare id. at 655 ("[T]he facts in the instant case are quite similar to the facts in Wood.  However, . . . there are additional facts . . . which justified . . . denial of appellant's motion to suppress."), with id. ("Because I find this case indistinguishable from [Wood], I respectfully dissent." (Lucero, J., dissenting)).  Arvizu did not alter our analysis, and we continue to abide by the totality of the circumstances test, as we did in Wood.  See 106 F.3d at 946.

[5] The Officers also argue Vasquez's appeal is frivolous, and he made a false declaration of poverty.  As we reverse the district court, this appeal clearly is not frivolous.  And the Officers admit they do not have access to Vasquez's application to proceed in forma pauperis.  Thus, the Officers cannot know whether Vasquez's

12

declaration of poverty was truthful, and we reject their assertion that Vasquez's declaration was false.

14-3278, *Vasquez v. Lewis*

**TYMKOVICH**, C.J., dissenting.

This case presents a close call on reasonable suspicion. But the essence of qualified immunity is to give government officials protection in resolving close calls in reasonable ways. Because the majority employs a divide-and-conquer analysis specifically rejected by the Supreme Court and because Vasquez cannot identify clearly established law necessary to overcome qualified immunity, I respectfully dissent.

When the defense of qualified immunity is raised, we require the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. Vasquez challenges that his detention beyond the original traffic stop violated the Fourth Amendment. But such detention is permissible where the officer has an "objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring . . . ." *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994).

"[R]easonable suspicion is not, and is not meant to be, an onerous standard." *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015) (quoting *United States v. Kitchell*, 653 F.3d 1206, 1219 (10th Cir. 2011)). An officer need only have "a 'particularized and objective basis for suspecting' criminal conduct under a totality of the circumstances." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

The majority, in effect, takes the district court finding and concludes that 0 + 0 + 0 cannot = reasonable suspicion. Of course, a series of completely innocent conduct does not create reasonable suspicion. But the Supreme Court instructs us not to employ a "divide-and-conquer analysis" and requires us to consider the "totality of the circumstances." *See United States v. Arvizu*, 534 U.S. 266 (2002).

In *Arvizu*, a particularly instructive case, the Court reversed the Ninth Circuit's determination that a border patrol agent had no reasonable suspicion to detain a minivan. The Ninth Circuit had independently examined ten factors supporting reasonable suspicion and determined that seven of them should not be given much weight because those factors were each readily susceptible to innocent explanation. *Id.* at 274. In rejecting this approach, the Court held that even if each factor is consistent with innocent travel, factors when taken together can warrant further investigation. Our cases agree. *See, e.g.*, *Pettit*, 785 F.3d at 1380 ("We evaluate each of the factors supporting reasonable suspicion separately and in aggregate."); *United States v. Padilla-Esparza*, 798 F.3d 993, 999 (10th Cir. 2015); *United States v. Santos*, 403 F.3d 1120, 1133–34 (10th Cir. 2005); *United States v. Quintana-Garcia*, 343 F.3d 1266, 1270–71 (10th Cir. 2003).

Under this analysis, no factor can be given a constant weight of zero in a reasonable suspicion equation. *See, e.g.*, *Arvizu*, 534 U.S. at 275–76 ("We think it quite reasonable that a driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in

2

one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona).").  Vasquez's story struck the officers as unusual, and when a police officer encounters a series of unusual facts, each factor no longer carries a weight of zero; together they may provide a "particularized and objective basis" to suspect illegal activity.  *Id.* at 273 (quoting *Cortez*, 449 U.S. at 417–18 (1981)).[1]

But even assuming a lack of reasonable suspicion, I would still affirm the district court because Vasquez has not pointed to clearly established law.  While the precise conduct in question need not have been previously held unlawful, "'the contours of the right' must be 'sufficiently clear that a reasonable official' would understand that what he is doing violates that right."  *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1206 (10th Cir. 2012)).  The Supreme Court has recently emphasized that the

> dispositive question is whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a

---

[1] The majority particularly objects to giving weight to a driver's route from a drug-source area to a drug-market area, especially in the aftermath of legalized marijuana.  I appreciate this concern.  Standing alone, traveling from a drug-source area is simply insufficient to establish reasonable suspicion and we have held it is "at best, a weak factor" in contributing to reasonable suspicion.  *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001).  Although here I would not find travel from a state that had legalized marijuana suspicious, we should recognize, especially near borders where smuggling is common, law enforcement can discern patterns in drug trafficking.  *See Arvizu*, 534 U.S. at 275–76 (reasoning that driver and passenger behavior near the Mexican border may be assessed with regard to location).

> broad general proposition.  Such specificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confront[ed].

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal brackets, citations, and quotations omitted).

Vasquez points to no Supreme Court or Tenth Circuit case with sufficiently analogous facts.  He and the majority rely on a case where we held the police lacked reasonable suspicion where the driver "had fast food wrappers and other trash in his car, he had open maps out, he misidentified the place where he picked up his rental car, and he described somewhat expensive travel plans despite being temporarily employed."  *United States v. Toledo*, 139 F.3d 913 (10th Cir. 1998) (unpublished table opinion) (describing the holding of *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997)).

I disagree that *Wood* clearly defines the absence of reasonable suspicion here, especially given the multiple times we have affirmed district court decisions finding reasonable suspicion while citing and distinguishing *Wood*.  Consider three examples:

(1) *United States v. $49,000.00 in U.S. Currency, More or Less*, 208 F. App'x 651 (10th Cir. 2006).  Officers pulled over an afternoon driver on Interstate 70 in Kansas.  The driver lived in Los Angeles but rented a car from

4

Detroit, was nervous, and had a prior arrest for possession of marijuana with intent to distribute.

(2) *Toledo*, 139 F.3d 913. Officers also pulled over an afternoon driver on Interstate 70 in Kansas. The driver gave inconsistent accounts of his travel plans to explain why he was headed to North Carolina but the rental car needed to be returned in California. The car smelled of air freshener, the defendant had a prior drug conviction, and acted nervously.

(3) *United States v. Williams*, 271 F.3d 1262 (10th Cir. 2001). Again, this case involved an afternoon driver on Interstate 70 in Kansas. The driver was nervous, had a two-way, short-range radio despite attesting to be traveling alone, was not named in the rental agreement, and was traveling from a drug-source area.

Our treatment of *Wood* in this line of cases "reveal[s] the hazy legal backdrop," against which Officers Jimerson and Lewis acted. *Mullenix*, 136 S. Ct. at 309. The officers encountered a sufficiently different factual scenario than in *Wood*, especially in light of almost twenty years of cases distinguishing it.

Most notably, the two cases differ in the degree of unusual travel plans. The court in *Wood* declined to give any weight to Wood's "unusual" travel plans – driving a rental car from Sacramento to Topeka. 106 F.3d at 946–47. As a preliminary matter, this reasoning puts *Wood* on shaky ground. In *Wood*, we "stripp[ed] away the factors which must be disregarded because they are

5

innocuous," 106 F.3d at 948, which is precisely what the Supreme Court warned against in *Arvizu*. Regardless, Vasquez's travel plans are sufficiently distinct as to allow a reasonable officer to be more suspicious. Vasquez asserted he was moving, but no items in his car aligned with his story. Vasquez was driving in the middle of the night, apparently sleeping in his car. Vasquez was driving a newly-purchased twenty-year-old car, despite owning a new car, and had a flimsy, even implausible, explanation as to why.[2]

Because reasonable officers may differ regarding whether Vasquez's detention violated the Fourth Amendment, I would affirm the district court's finding of qualified immunity.

---

[2] The majority characterizes that Vasquez told Trooper Lewis he bought the newer car for his girlfriend, which explains why he was driving the older one. But the transcript shows that Vasquez told Trooper Lewis he bought the older car for his girlfriend, which raised Trooper Lewis's suspicions.

> [Trooper Lewis]: So, you have a 2011 Chevy Malibu too?
> [Vasquez]: Yeah.
> [Trooper Lewis]: Okay. And how come you're driving the older car across the country?
> [Vasquez]: What's that?
> [Trooper Lewis]: How come you're driving the older one across the country?
> [Vasquez]: Because I bought it for my girlfriend.
> [Trooper Lewis]: This? Oh, okay.

R., Vol. I at 25–26.