FILED
United States Court of Appeals
Tenth Circuit

December 13, 2023

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

WILLIAM MONTGOMERY,

    Plaintiff - Appellee,

v.

TRAVIS LORE,

    Defendant - Appellant.

No. 23-1106
(D.C. No. 1:21-CV-02553-PAB-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**\*
_____

Before **PHILLIPS**, **KELLY**, and **McHUGH**, Circuit Judges.
_____

William Montgomery sued police officer Travis Lore under 42 U.S.C. § 1983, alleging Officer Lore violated his Fourth Amendment rights. Invoking qualified immunity, Officer Lore moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion in part but denied it in part, and Officer Lore filed an interlocutory appeal. Exercising jurisdiction under 28 U.S.C. § 1291 pursuant to the collateral-order doctrine, *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), we affirm.

---

  \* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND[1]

At about 8:35 p.m. on September 17, 2019, Mr. Montgomery visited a Walmart store on East Exposition Avenue in Aurora, Colorado.  He selected and paid for one package of hand wipes and one package of disinfecting wipes, but he declined a bag.  Holding the wipes in his hands, he left the store just after 9 p.m.

Officer Lore is an Aurora police officer who was off-duty and working for Walmart that evening.  He was uniformed and "'posted up' at the store's exit."  Aplt. App. at 11.  He followed Mr. Montgomery into the parking lot, catching up with him by his vehicle.  He asked Mr. Montgomery for a receipt for the wipes, which Mr. Montgomery declined to provide.  Mr. Montgomery placed the wipes into a pocket inside his jacket.

Officer Lore asked several more times to see a receipt and then asked for Mr. Montgomery's identification.  When Mr. Montgomery asked if he was being detained, Officer Lore said yes.  Officer Lore then directed Mr. Montgomery to sit on the ground, which Mr. Montgomery did.  A few moments later, Officer Lore asked Mr. Montgomery to stand up and come back to the store for further investigation, and again Mr. Montgomery complied.  Once back in the store, Mr. Montgomery gave Officer Lore his identification.

---

[1] We take the facts solely from the complaint. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting court must scrutinize "defendant's conduct as alleged in the complaint" when defendant asserts qualified immunity on the pleadings (emphasis omitted)).

Officer Lore then patted Mr. Montgomery down.  When Mr. Montgomery asked whether there were any indications he was armed and dangerous, Officer Lore responded that he did not know Mr. Montgomery.

In one of Mr. Montgomery's pants pockets were "two RV body lights" that he had purchased earlier and had been thinking about returning.  Aplt. App. at 12.  Officer Lore felt the pocket and asked Mr. Montgomery whether he had stolen them in addition to the wipes.  Mr. Montgomery said nothing about the lights.  Officer Lore then removed the wipes from Mr. Montgomery's jacket pocket.  Mr. Montgomery objected.  Officer Lore directed him to sit down, which he did.  Two other officers stood by him while Officer Lore investigated.

Officer Lore came back after about 15 minutes and told Mr. Montgomery he would be cited for shoplifting the wipes.  Officer Lore then asked Mr. Montgomery again about the RV lights.  He reached into Mr. Montgomery's pants pocket and removed the lights.  He told Mr. Montgomery he would hold on to the lights while he investigated whether they were stolen as well.

After another 15 minutes, Officer Lore returned and told Mr. Montgomery he would be cited for shoplifting the lights as well as the wipes.  Mr. Montgomery was released, without either the wipes or the lights.  The next day, Officer Lore spoke with Mr. Montgomery on the phone and told him that all charges were being dropped and Mr. Montgomery could pick up his wipes and lights from the police department's evidence room.

3

Mr. Montgomery brought suit against Officer Lore under § 1983, alleging five violations of the Fourth Amendment:  (1) unreasonable relocation of his person, (2) unreasonable search of his person, (3) unreasonable seizure of the wipes, (4) unreasonable seizure of the lights, and (5) unreasonable detention to investigate the lights.  Officer Lore moved to dismiss under the doctrine of qualified immunity, and the magistrate judge recommended granting the motion as to all claims.  Mr. Montgomery objected.  The district court granted Officer Lore's motion as to claims one through three, but it denied relief as to claims four and five (the claims based on the RV lights).

Officer Lore now appeals.

## DISCUSSION

### I.    Background Legal Principles

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Est. of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (internal quotation marks omitted).  "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Id.* (internal quotation marks omitted).

"The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment, guarantees the right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."
*Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (brackets, citation, and internal
quotation marks omitted). "[T]he Fourth Amendment protects people, not places,
and wherever an individual may harbor a reasonable expectation of privacy, he is
entitled to be free from unreasonable governmental intrusion." *Terry v. Ohio*,
392 U.S. 1, 9 (1968) (citations and internal quotation marks omitted). "In
determining whether [a] seizure and search were 'unreasonable' our inquiry is a dual
one—whether the officer's action was justified at its inception, and whether it was
reasonably related in scope to the circumstances which justified the interference in
the first place." *Id.* at 19-20.

Under *Terry*, "where a police officer observes unusual conduct which leads
him reasonably to conclude in light of his experience that criminal activity may be
afoot," the officer may briefly stop the person and make "reasonable inquiries." *Id.*
at 30. And as part of a *Terry* stop, "[w]hen an officer is justified in believing that the
individual whose suspicious behavior he is investigating at close range is armed and
presently dangerous to the officer or to others," *id.* at 24, the officer may conduct a
limited pat-down search "in an attempt to discover weapons which might be used to
assault him," *id.* at 30.

After *Terry*, however, the Supreme Court emphasized that "[i]n the name of
investigating a person who is no more than suspected of criminal activity, the police
may not carry out a full search of the person or of his automobile or other effects."
*Florida v. Royer*, 460 U.S. 491, 499 (1983) (plurality opinion). "The [Fourth]

5

Amendment's protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a warrantless search: the search must be limited in scope to that which is justified by the particular purposes served by the exception." *Id.* at 500. "The scope of the detention must be carefully tailored to its underlying justification." *Id.*

In *Dickerson*, the Supreme Court extended *Terry* to the extent that "police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by *Terry*," but only "so long as the officers' search stays with the bounds marked by *Terry*." 508 U.S. at 373. In explaining the extension, *Dickerson* stated:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

508 U.S. at 375-76. At the same time, however, the Court cautioned that "the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures." *Id.* at 376. In *Dickerson*, the Court held that the officer had "overstepped the bounds of the strictly circumscribed search for weapons allowed under *Terry*" by manipulating the lump he found in the defendant's jacket pocket, which turned out to be cocaine. *Id.* at 378 (internal quotation marks omitted).

> Although the officer was lawfully in a position to feel the lump in [the defendant's] pocket, because *Terry* entitled him to place his hands upon

[the defendant's] jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by *Terry* or by any other exception to the warrant requirement. Because this further search of [the defendant's] pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.

*Id.* at 379.

Moving to the second part of the qualified-immunity inquiry, "[t]he law is clearly established when there is an on point Supreme Court or Tenth Circuit decision, or the clearly established weight of authority from other courts have found the law to be as the plaintiff maintains." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1167 (10th Cir. 2022) (internal quotation marks omitted), *cert. denied sub nom Anderson v. Calder*, 143 S. Ct. 2658 (2023). "[T]he rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal quotation marks omitted). "The key question is whether the defendants had fair warning that their conduct was unconstitutional." *Id.* (internal quotation marks omitted).

## II.    Standards of Review

We review the denial of a Rule 12(b)(6) motion de novo. *See Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). We construe the pro se complaint liberally, *see Johnson v. Reyna*, 57 F.4th 769, 775 (10th Cir. 2023), but we do not act as Mr. Montgomery's "attorney in constructing arguments and searching the record," *Eldridge v. Berkebile*, 791 F.3d 1239, 1243 n.4 (10th Cir. 2015). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a

more challenging standard of review than would apply on summary judgment"

"because at the motion to dismiss stage, it is the defendant's conduct *as alleged in*

*the complaint* that is scrutinized for objective legal reasonableness." *Hemry*, 62 F.4th

at 1253 (brackets and internal quotation marks omitted).

**III.   Analysis**

**A.      The complaint plausibly pleads that Officer Lore violated
Mr. Montgomery's constitutional rights.**

**i.      The complaint pleaded Officer Lore unconstitutionally seized
the RV lights.**

The district court determined that on the allegations of the complaint,

Officer Lore had reasonable suspicion to detain Mr. Montgomery for shoplifting the

wipes and probable cause to seize the wipes.  But the court reached a different

conclusion regarding the seizure of the RV lights.  Finding that "[t]here is no

evidence at this stage of the proceedings that [Officer Lore] immediately recognized

the items in [Mr. Montgomery's] pocket as contraband," and that "there are no

allegations in the complaint indicating that [Officer Lore] recognized from his pat

down the nature of the items such that he had probable cause to believe that they

were stolen merchandise from the store," the district court concluded that

Officer Lore lacked probable cause to seize the RV lights.  Aplt. App. at 207.

Therefore, Mr. Montgomery "stated a plausible claim that [Officer Lore] violated his

Fourth Amendment rights by unreasonably seizing the RV lights." *Id.*

On appeal, Officer Lore first asserts that his search of Mr. Montgomery and

discovery of the RV lights was supported by probable cause.  But the complaint does

8

not provide facts to support a conclusion that the officer had probable cause regarding anything but the wipes. And the pat down of Mr. Montgomery's pants pockets went beyond any need to seize the wipes; according to the complaint, Officer Lore had watched Mr. Montgomery put the wipes inside his jacket, so he knew the location of the suspect merchandise. Further, the complaint does not allege facts to support the inference that at the time of the pat down Officer Lore was conducting a full search incident to a warrantless arrest based on probable cause.

Officer Lore alternatively suggests if his authority was limited to a pat down frisk, the complaint's allegations establish that he immediately recognized the RV lights as potential stolen merchandise. He states that the district court's decision "hinges entirely on a mistaken finding that it was not until fifteen minutes after the initial pat down that Officer Lore first asked Montgomery about the RV lights located in his pants pockets." Aplt. Opening Br. at 12. He points to the allegation that he questioned Mr. Montgomery about the RV lights in the initial pat down search, and the allegation that after returning from investigating the wipes, he "once again asked" about the RV lights, Aplt. App. at 14. "Thus, the allegations in the Complaint reveal that Officer Lore did immediately identify the RV lights as possible contraband (stolen merchandise) during the initial pat down search of Montgomery." Aplt. Opening Br. at 15.

We disagree that the district court erred in reading the complaint. As stated above, the facts as pleaded indicate the pat down was in the nature of a *Terry* frisk: there are no facts indicating that Officer Lore ever arrested Mr. Montgomery, and

9

when asked why he was searching Mr. Montgomery, Officer Lore responded he did not know him (perhaps indicating that the officer was concerned for his own safety). And although the complaint states that Officer Lore asked about the RV lights during the initial search, the facts as pleaded do not establish that the officer even knew what the objects in Mr. Montgomery's pockets were, much less that he could tell that the objects were contraband by touch alone. *See Dickerson*, 508 U.S. at 375 (conditioning application of the contraband exception to situations in which an officer "feels an object whose contour or mass *makes its identity immediately apparent*" (emphasis added)). (And to that point, the complaint pleads that the RV lights were not contraband at all, as it states that Mr. Montgomery had purchased them earlier.) Officer Lore might have suspected that the items in Mr. Montgomery's pockets were store merchandise that Mr. Montgomery had not paid for, but under the facts as pleaded, he could not confirm that suspicion without removing the RV lights from Mr. Montgomery's pocket and initiating an investigation. And he could not do that and remain within the scope of a *Terry* frisk. *See id.* at 378-79.

This situation is analogous to *Dickerson*, in which the officer felt a lump in the defendant's pocket while performing a *Terry* frisk. *See id.* at 369. Suspecting it might be cocaine, the officer "examined it with [his] fingers and it slid and it felt to be a lump of crack cocaine in cellophane." *Id.* (internal quotation marks omitted). The officer reached into the defendant's pocket and pulled out a plastic bag containing crack cocaine. *See id.* The Supreme Court held that "the officer's continued exploration of [the defendant's] pocket after having concluded that it

10

contained no weapon was unrelated to the sole justification of the search under *Terry*: the protection of the police officer and others nearby." *Id.* at 378 (alterations and internal quotation marks omitted). "It therefore amounted to the sort of evidentiary search that *Terry* expressly refused to authorize." *Id.* Because the "incriminating character of the object was not immediately apparent," and the officer "determined that the item was contraband only after conducting a further search" that was "constitutionally invalid," the seizure was "likewise unconstitutional." *Id.* at 379.

Similarly, the complaint here does not plead any facts to indicate that Officer Lore thought the object in Mr. Montgomery's pocket was a weapon. It also does not plead any facts to show that Officer Lore could determine, without further investigation, that the object was contraband. That being so, the complaint adequately pleads that the officer's conduct in reaching in and removing the RV lights was unrelated to the justification of the search under *Terry*. *See id.* at 378 ("Where, as here, an officer who is executing a valid search for one item seizes a different item, this Court rightly has been sensitive to the danger that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." (ellipsis and internal quotation marks omitted). We therefore affirm the determination that the complaint adequately pleads Officer Lore violated Mr. Montgomery's constitutional rights when he seized the RV lights.

### ii.    The complaint pleaded Officer Lore unconstitutionally prolonged the detention.

After concluding the complaint pleaded Officer Lore unconstitutionally seized the RV lights, the district court determined that Officer Lore's "detention of [Mr. Montgomery] for fifteen additional minutes to investigate the RV lights, without any objectively reasonable suspicion that the RV lights were stolen merchandise, exceeded the scope of [Mr. Montgomery's] detention for the wipe packages," so that Mr. Montgomery "stated a plausible claim that [Officer Lore] violated his Fourth Amendment rights by detaining him to investigate the RV lights."  Aplt. App. at 209.

"[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  The Supreme Court has held it "is clear [that] an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500; *see also Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."); *Caballes*, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").  Because the complaint pleads facts showing that Officer Lore extended the detention of Mr. Montgomery beyond the time needed to investigate the alleged

shoplifting of the wipes, it adequately pleaded the continued detention violated Mr. Montgomery's Fourth Amendment rights.

Officer Lore asserts that the additional detention was not unlawful because he immediately recognized the RV lights as potential contraband. As discussed above, however, the complaint does not plead sufficient facts to establish that Officer Lore could determine the RV lights were contraband without first seizing them. This argument thus rests on the unsupported predicate that the seizure was constitutional, as does Officer Lore's alternative argument that any delay is Mr. Montgomery's own fault because he refused to produce a receipt for the RV lights. *See also Royer*, 460 U.S. at 498 (stating that a person's "refusal to . . . answer does not, without more, furnish" reasonable, objective grounds for a detention).

Finally, Officer Lore asserts that any extension of the detention was de minimis at most. We have recognized, however, that beyond the point at which any initial justification for a stop has "vanished," "even a very brief extension of the detention without consent or reasonable suspicion violates the Fourth Amendment." *United States v. De La Cruz*, 703 F.3d 1193, 1197 (10th Cir. 2013) (brackets and internal quotation marks omitted); *see also Royer*, 460 U.S. at 498 (stating that a person "may not be detained *even momentarily* without reasonable, objective grounds for doing so" (emphasis added)). In *Rodriguez*, the Supreme Court held that an extended detention lasting only seven or eight minutes (half of the 15-minute additional detention alleged here) could violate the Fourth Amendment. 575 U.S.

13

at 352, 357-58. The length of the detention thus does not provide grounds for dismissing the claim under Rule 12(b)(6).

For these reasons, we affirm the determination that the complaint adequately pleaded that Officer Lore unconstitutionally extended the detention.

**B.    The law was clearly established when Officer Lore acted.**

The district court further concluded that the law was clearly established as to both the seizure and the extended detention. As to the seizure, it held "the law was clearly established that an officer cannot seize an item in a suspect's pocket if the incriminating character of the item is not 'immediately apparent.'" Aplt. App. at 207 (quoting *Dickerson*, 508 U.S. at 375-78). And as to the extended detention, it held "the law was clearly established that an officer cannot continue to detain a suspect, absent reasonable suspicion, once the purpose of the stop is satisfied." *Id.* at 209 (citing *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994), and *Vasquez v. Lewis*, 834 F.3d 1132, 1136 (10th Cir. 2016)).

Officer Lore tackles both of these propositions together, arguing that "there is no clearly established law when suspected contraband must be seized." Aplt. Opening Br. at 18 (bolding, underlining, and capitalization omitted). He continues, "[n]either Montgomery nor the District Court provided any clearly established law indicating that an officer has to immediately seize items that he has identified as contraband or that an investigative detention of 30 minutes is unreasonable under these circumstances." *Id.* at 19. Again, however, the complaint does not contain

14

sufficient facts to establish that Officer Lore could and did know, from plain touch without further investigation, that the RV lights were contraband.

We agree with the district court that the law was clearly established as to both the seizure of the RV lights and the continued detention. As the district court held, *Dickerson* clearly established that an officer performing a *Terry* frisk may seize only objects whose nature as contraband is apparent without further investigation. *See Dickerson*, 508 U.S. at 378-79. And as stated above, the Supreme Court long has recognized that an officer may not extend an investigative detention beyond the time needed for the purpose of the stop. *See Rodriguez*, 575 U.S. at 357; *Caballes*, 543 U.S. at 407; *Royer*, 460 U.S. at 500. This court has articulated the same principle. *See, e.g.*, *United States v. White*, 584 F.3d 935, 953 (10th Cir. 2009) ("While the scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of either dispelling or confirming the officer's reasonable suspicion." (alterations and internal quotation marks omitted)); *United States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997) ("An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the detention. The scope of the detention must be carefully tailored to its underlying justification.").

## CONCLUSION

We affirm the district court's partial denial of Officer Lore's Rule 12(b)(6) motion.

Entered for the Court

Gregory A. Phillips
Circuit Judge